

**MATTHEW LAROCHE**
*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5514
mlaroche@milbank.com  |  milbank.com

August 22, 2025

**VIA ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Nikhil Gupta*, 23 Cr. 289 (VM)

Dear Judge Marrero:

    We write on behalf of Defendant Nikhil Gupta in response to the government's August 19, 2025 letter (Dkt. 99) and in further support of the defense's request that the Court order the government to search for and produce key discovery relating to the participation of CA Brannon and SA Catalano in Mr. Gupta's case.[1] The government does not dispute that the Requested Materials are relevant and material to the defense. Nor could it. CA Brannon and SA Catalano—who were the focus of testimony during the suppression hearing—likely possess information about the DEA's coordination with Czech officials that is exculpatory and critical to Mr. Gupta's defense. Instead, the government argues that it has no obligation to ask CA Brannon and SA Catalano for those materials because they "had no investigative duties in this case." Dkt. 99 ("Ltr.") at 3. The government's position is contrary to the facts and law.

    As outlined below, CA Brannon and SA Catalano participated directly and substantially in the DEA's investigation. They (i) coordinated and planned the arrest operation during multiple meetings with Czech law enforcement; (ii) received information about Mr. Gupta from a key DEA Confidential Source ("CS") and passed that information in real time to Czech law enforcement to effectuate Mr. Gupta's arrest; and (iii) collected and transported critical evidence obtained during Mr. Gupta's arrest, including Mr. Gupta's three cellphones. Courts have concluded that individuals with far less involvement in a case were members of the prosecution team, even when

---

[1] Defined terms have the same meaning as in the defense's August 11, 2025 letter. "Tr." refers to the transcript of the August 12, 2025 suppression hearing and "GX" refers to government exhibits at that hearing.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

The Honorable Victor Marrero
August 22, 2025                                                                                                                 Page 2

those individuals were employed by agencies that had no direct involvement in the investigation. *See infra* Section I.

The government's position otherwise is unprecedented. The defense is not aware of a case finding that agents employed by the lead investigative agency were not members of the prosecution team in remotely similar circumstances, and the government has not cited one. To accept the government's view would allow it to play fast and loose with its disclosure obligations, which is what the government did here. In response to defense requests for the Requested Materials, the government initially represented that it spoke to CA Brannon or SA Catalano, leaving the impression that the government was searching their files for responsive materials. Yet, on the day before the suppression hearing—after the government disclosed Jencks Act material reinforcing CA Brannon and SA Catalano's key role in this case—the government took the position, for the first time, that they are not on the prosecution team and so did not have to search their files. This left the defense scrambling to address a critical discovery dispute, which the government failed to disclose until hours before a key hearing.

For these reasons and those below, the Court should order the government to produce the Requested Materials. Doing so would not impose any significant burden on the government, which was already in contact with CA Brannon and SA Catalano, and it would ensure that Mr. Gupta is provided the discoverable materials to which he is entitled under the law.

**I.    The Government is Wrong that CA Brannon and SA Catalano Did Not Play Significant Roles in the Investigation**

Prosecutors are obligated under *Brady* "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). This means that prosecutors must search for and disclose evidence in the possession of those on the prosecution team. *Id.*; *see also United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013). Though the point at which an individual becomes a member of the prosecution team is a fact-intensive inquiry, the case law is clear that those working for the lead investigating agency who participate directly in the investigation are on the prosecution team. *See, e.g.*, *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006); *United States v. Blondet*, 2022 WL 549707, at *2 (S.D.N.Y. Feb. 23, 2022).

The government contends that CA Brannon and SA Catalano do not qualify because they had no investigative responsibilities and made no strategic decisions. Ltr. at 3-4. This assertion ignores and distorts the record, as developed at the suppression hearing, which shows that CA Brannon and SA Catalano had key roles in the investigation.

CA Brannon and SA Catalano began participating in Mr. Gupta's investigation weeks before he was arrested. Tr. at 82:16-83:2. In mid-June 2023, after learning that Mr. Gupta would be traveling to the Czech Republic, TFO Sandobal contacted CA Brannon and SA Catalano, who would become the direct points of contact with Czech law enforcement. Tr. at 83:3-9. Far from

The Honorable Victor Marrero
August 22, 2025                                                                                                      Page 3

simply "arrang[ing] meetings" (Ltr. at 3), CA Brannon and SA Catalano were responsible for making requests of Czech law enforcement in furtherance of the investigation, which included requests to arrest Mr. Gupta and seize his phones. Tr. at 91:3-25, 130:19-25. On June 19, 2023, the government also represented in its provisional arrest request to the Czech authorities that CA Brannon "has knowledge of the investigation in this matter." Dkt. 68-1.

In the days prior to Mr. Gupta's arrest, CA Brannon and SA Catalano participated, along with the DEA case agents, in at least two in-person meetings with Czech law enforcement to discuss the arrest plan and seizure of "important" evidence. Tr. 22:24-23:2, 88:14-22, 93:21-23. During the meeting on the day before Mr. Gupta's arrest, one of the DEA agents other than TFO Sandobal told Czech law enforcement officers that the DEA "would like to get Mr. Gupta's phones" and that "if [the phones] are unlocked, even better." Tr. 91:3-6; 92:11-14. SA Franks' Jencks Act material does not reflect that he made those statements, meaning that they most likely were made by SA Catalano or CA Brannon. Seizing and searching Mr. Gupta's phones was an important strategic consideration in the investigation. Tr. at 92:21-93:14. This is reinforced by the fact that shortly after Mr. Gupta's arrest, the prosecutors asked the DEA case agents whether they seized Mr. Gupta's phones. GX 107.

CA Brannon and SA Catalano continued to play key roles in this investigation on the day of Mr. Gupta's arrest. Prior to the arrest, they met again with TFO Sandobal, SA Franks, and Czech law enforcement to review the arrest plan. Tr. at 21:8-24. Chat messages reflect that SA Catalano likely had an additional strategy meeting with Czech law enforcement, which was not attended by TFO Sandobal. GX 111 at 3-4; Tr. at 29:2-7. And on two occasions, SA Catalano provided information from the DEA's CS to Czech law enforcement as part of the arrest operation, including information on Mr. Gupta's location. GX 111 at 2-3; Tr. at 86:5-19. Following the arrest, SA Catalano also took custody of Mr. Gupta's phones and later caused them to be transported back to New York.

Taken together, these facts establish that CA Brannon and SA Catalano were members of the prosecution team. Participating in strategy meetings about arrest operations and seizing evidence, conveying information from a confidential source to effectuate a defendant's arrest, and collecting and transporting key evidence are not the "routine functions" of in-country liaisons. Ltr. at 4. Rather, CA Brannon and SA Catalano had key investigative roles that fit within the prosecution team framework outlined by numerous courts. *See, e.g.*, *Kyles*, 514 U.S. at 438 (rejecting the argument that a state prosecutor "should not be held accountable . . . for evidence known only to police investigators and not to the prosecutor"); *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975) (government agent part of prosecution team where, among other things, he actively participated in the investigation and oversaw a confidential informant); *Thomas*, 981 F. Supp. 2d at 239 (detective who "assisted in the investigation" was part of the prosecution team); *United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("The prosecution team may also include individuals who are not strategic decision-makers" including those "who submit to the direction of the prosecutor and aid in the Government's investigation").

The Honorable Victor Marrero
August 22, 2025                                                                                                          Page 4

In fact, courts have concluded that individuals with far less involvement in an investigation were on the prosecution team. For example, in *United States v. Bin Laden*, 397 F. Supp. 2d 465, 482-85 (S.D.N.Y. 2005), the court found that the U.S. Marshals Service was on the prosecution team because it recorded teleconferences between the government and a cooperating witness. The court reached this conclusion even though the Marshals played no role in the investigation outside of the recordings, which prosecutors did not know existed until after trial. *Id.* at 484-85. The defense relied on this case in its initial letter, but the government overlooked it in its response.

## II.     The Government Relies on Cases that Do Not Support Its Position

The government has not identified a case in which federal agents who worked for the lead investigative agency and who meaningfully participated in the investigation were deemed not to be part of the prosecution team. Instead, the government relies on cases in which defendants sought discovery from cooperators or witnesses who were not in law enforcement, or from agencies who conducted parallel investigations but which did not participate in the prosecution. *See, e.g.*, *Stewart*, 433 F.3d at 298 (expert witness); *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (cooperator); *Meregildo,* 920 F. Supp. 2d at 442-43 (cooperator); *United States v. Avenatti*, 2022 WL 457315, at *9 (S.D.N.Y. Feb. 15, 2022) (two agencies conducted separate investigations for which there was limited or no consultation on significant developments, limited document sharing, and no evidence of directions given); *United States v. Ingarfield*, 2023 WL 3123002, at *3 (S.D.N.Y. Apr. 27, 2023) (no imputation where SEC conducted parallel, independent investigation pursuant to access requests because no evidence that any directions were given and information flowed only one direction); *United States v. Alexandre*, 2023 WL 416405, at *6 (S.D.N.Y. Jan. 26, 2023) (similar).

The government relies heavily on *United States v. Hiya*, 2025 WL 1178115, at *4 (S.D.N.Y. Apr. 21, 2025), but that case supports Mr. Gupta's position. In *Hiya*, the defendant sought discovery from FBI country attachés who coordinated with Malaysian officials for the defendant's extradition, but did not participate in the underlying investigation or strategic decisions in the case. *Id.* The facts here are starkly different. Moreover, requiring the government to search the files of CA Brannon and SA Catalano would not result in the parade of horribles outlined in the government's letter. Ltr. at 7. Granting the defense's request would not create an "unlimited duty" to search the files of any country attaché that participates in an investigation. *Id.* Rather, the precedent set would be unremarkable—that in a case investigated by the DEA, the government must search the files of DEA agents who planned and participated in the defendant's arrest, received information from a DEA CS in furtherance of the investigation, and collected and transported key evidence.[2]

---

[2]     For the avoidance of doubt, the defense has made a prima facie showing that the Requested Materials are material under Rule 16 and likely exculpatory under *Brady*. *See, e.g.*, *Hiya*, 2025 WL 1178115, at *6. As outlined in the defense's letters dated August 5 and 12, 2025 and reinforced during the suppression hearing, the discovery provided to date about CA Brannon and

The Honorable Victor Marrero
August 22, 2025                                                                                                                    Page 5

### III. Mr. Gupta's Discovery Request is Not Moot Even if the Court Determines That He Voluntarily Provided His Passcodes

The government argues that Mr. Gupta's request is moot if the Court determines that he voluntarily provided his passcodes to Czech authorities. Not so. As an initial matter, the requested discovery could support Mr. Gupta's arguments that Czech authorities pressured Mr. Gupta to provide his passcodes. Mr. Gupta has also argued that even if he voluntarily provided his passcodes, the Court still should suppress the phone extractions based on the joint venture doctrine. *See* Dkt. 66 at 24; Dkt. 90 at 12. Regardless, the government should not be permitted to avoid its discovery obligations by arguing that the voluntariness point is moot. Mr. Gupta may have approached the suppression hearing differently if he were in possession of the full panoply of discovery to which he was entitled.

* * *

For the foregoing reasons, the defense respectfully requests that the Court compel the government to promptly search for and produce the Requested Materials.

Respectfully submitted,

*[signature]*

Matthew Laroche
Nola B. Heller

---

SA Catalano supports defense arguments that the DEA and Czech authorities participated in a joint venture in connection with Mr. Gupta's arrest. Dkt. 80, 96. The Requested Materials likely will reinforce those arguments, which the government does not dispute in its August 19 letter.