```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/27/2025
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

            - against -

NIKHIL GUPTA,

                     Defendant.

**23 CR 289 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

Pending before the Court is the motion of defendant Nikhil Gupta ("Gupta" or "Defendant") to compel discovery regarding all communications and/or documents exchanged between the United States Drug Enforcement Administration ("DEA") and the Czech Republic related to Gupta's arrest. (See "Def. Mot.," Dkt. No. 95.) Specifically, Gupta seeks all communications and/or documents related to DEA Country Attaché Kyle Brannon ("CA Brannon") and Special Agent Jose Catalano ("SA Catalano," and together with CA Brannon, the "Country Attachés"). The Government has filed an opposition, (see "Gov't Opp'n," Dkt. No. 99), and Gupta has filed a reply. (See "Def. Reply," Dkt. No. 100.) For the reasons explained further below, the Court concludes that the Country Attachés are not members of the prosecution team. Accordingly, Gupta's motion to compel is **DENIED**.

As the Government's discovery obligations extend to information known to the prosecutor and others who can be considered members of the prosecution team, the Government must search for and produce Gupta's requested materials only if the Country Attachés are members of the prosecution team.[1] See United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998); United States v. Meregildo, 920 F. Supp. 2d 434, 439-41 (S.D.N.Y. 2013); see also Fed. R. Crim. P. 16(a)(1)(E)(i) (the government has a duty to disclose evidence that is material and "within the government's possession, custody, or control").

There is no clear test to determine when an individual is a member of the prosecution team, see Meregildo, 920 F. Supp. 2d at 441, and "whether an individual or agency is part of the prosecution team depends on the facts and circumstances of the case." United States v. Morgan, 302 F.R.D. 300, 304 (S.D.N.Y. 2014). Nonetheless, a common-sense approach is instructive. See id. "Individuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the

---

[1] The Government represents that it has already produced all discoverable materials in its possession regarding the Country Attachés and their role in coordinating Gupta's arrest in the Czech Republic. (See Gov't Opp'n at 1.)

2

direction of the prosecutor and participate in the investigation." United States v. Barcelo, 628 F. App'x 36, 38 (2d Cir. 2015); see also United States v. Bin Laden, 397 F. Supp. 2d 465, 484 (S.D.N.Y. 2005) (finding agents of the U.S. Marshal Service were members of the prosecution team because the agents installed video-teleconference equipment at the prosecutors' request, attended all conferences with the cooperator who was in the U.S. Marshal Service's witness protection program, which took place over several years, recorded the conferences in lieu of preparing reports, and made efforts to assist in the investigation). "[U]nder the totality of the circumstances, the more involved individuals are with the prosecutor, the more likely they are team members." Meregildo, 920 F. Supp. 2d at 442. However, "[i]nteracting with the prosecution team, without more, does not make someone a team member." Id. at 441-42. And "even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper." Id. at 441.

Further, some courts in this District "have held that the prosecution may be required to review material held by another federal agency when the prosecution conducts a joint investigation with that agency." United States v. Velissaris, No. 22 Cr. 105, 2022 WL 2392360, at *2 (S.D.N.Y. July 3,

3

2022). To determine whether there was a joint investigation, district courts consider whether the individual or entity "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." United States v. Ingarfield, No. 20 Cr. 146, 2023 WL 3123002, at *3 (S.D.N.Y. Apr. 27, 2023) (quoting United States v. Middendorf, No. 18 Cr. 036, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018)).

Ultimately, whether an individual is an "arm of the prosecution" turns on what the individual actually did - and what he did not do - in connection with the investigation and the subsequent judicial proceedings. See United States v. Stewart, 433 F.3d 273, 298 (2d Cir. 2006); compare id. at 298-99 (employee of the U.S. Secret Service, who testified as an expert, was not a member of the prosecution team because the employee acted only in the capacity of an expert witness and was not involved in the investigation, did not present the case to the grand jury, did not interview witnesses or gather facts, did not develop prosecutorial strategy, and did not - with the exception of one spreadsheet - review documents), with United States v. Morell, 524 F.2d 550, 555

(2d Cir. 1975) (DEA agent who supervised the witness, actively participated in the investigation and frequently sat at counsel table throughout the trial was a member of the prosecution team); United States v. Thomas, 981 F. Supp. 2d 229, 236-37, 239 (S.D.N.Y. 2013) (detective who assisted in the robbery investigation, which included tracking a stolen cellphone and interviewing one of the victims, and subsequently testified for the Government at trial was part of the prosecution team).

Gupta argues that the Country Attachés are members of the prosecution team because they were the primary logistical points of contact with Czech law enforcement regarding Gupta's arrest in the Czech Republic. (See Def. Mot. at 1, 4; Def. Reply at 1-4.) The Government acknowledges that the Country Attachés served as the logistical points of contact between Czech law enforcement and Task Force Officer Jose Sandobal ("TFO Sandobal") and Special Agent Mark Franks ("SA Franks," and together with TFO Sandobal, the "DEA Case Agents"). (See Gov't Opp'n at 3.) However, the Government maintains that the Country Attachés are not members of the prosecution team because the Country Attachés did not develop prosecutorial strategy, had no investigative responsibilities, did not present this case to the grand jury,

5

and have not accompanied the prosecution team to court. (See id.)

As a general matter, logistical coordination is insufficient to be considered part of the prosecution team. See United States v. Hiya, No. 24 Cr. 282, 2025 WL 1178115, at *4 (S.D.N.Y. Apr. 21, 2025), report and recommendation adopted by United States v. Hiya, No. 24 Cr. 282, 2025 WL 2416733 (S.D.N.Y. Aug. 21, 2025). In Hiya, this Court denied the defendant's motion to compel documents concerning communications of two legal attachés with the United States Federal Bureau of Investigation ("FBI"), who were stationed in Malaysia and were the FBI's principal points of contact with Malaysian officials. See Hiya, 2025 WL 1178115, at *2, *4. The Court concluded that the legal attachés were not members of the prosecution team because there was no evidence that those individuals investigated the passport fraud case, crafted prosecutorial strategy, or participated in witness interviews. See id. The Court also rejected the defendant's argument that at least one of the legal attachés had submitted to the direction of the prosecution. See id. Although the legal attaché had inquired with Malaysian authorities about deporting the defendant to the United States at the request of the prosecution, "asking a foreign-based FBI agent to send inquiries to officials of the host country does not make [the

6

attaché] an 'arm of the prosecution.'" Id. Ultimately, the legal attaché's coordination with Malaysian officials on behalf of the prosecution did not make the legal attaché "so integral to the prosecution team that imputation is proper." Id. (quoting Meregildo, 920 F. Supp. 2d at 441).

At the suppression hearing, TFO Sandobal testified that the Country Attachés (1) arranged meetings between the DEA Case Agents and Czech law enforcement to discuss Gupta's arrest in the Czech Republic, (2) attended meetings between the DEA Case Agents and Czech law enforcement, as the DEA Case Agents were not permitted to work with Czech law enforcement directly, (3) transported Gupta's cellphones, which were seized during the arrest, from the Czech Republic to the United States, and (4) coordinated with Czech authorities on legal assistance questions and the logistics of Gupta's extradition. (See Suppression Hearing Transcript (Aug. 12, 2025) [hereinafter "Transcript" or "Tr."] 14:14-16:11, 82:16-83:17, 137:22-138:21.) TFO Sandobal also testified that the Country Attachés did not have any investigative responsibilities, never conducted surveillance, never swore out a search warrant, did not review electronic evidence, did not participate in charging decisions, and did not participate in or attend Gupta's post-arrest interview, which was conducted by the DEA Case Agents.

7

(See id. at 131:17-132:15.) Under the totality of the circumstances, the Court finds that the Country Attachés cannot be deemed members of the prosecution team based on their logistical duties. See Hiya, 2025 WL 1178115, at *4; see also United States v. Kwok, No. 23 Cr. 118, 2024 WL 1719364, at *3 (S.D.N.Y. Apr. 22, 2024) (denying motion to compel because none of the FBI agents at issue investigated, strategized, or submitted to the Government's direction regarding the defendant's prosecution).

Gupta also argues that beyond logistical duties, the Country Attachés had investigative responsibilities, which included requests to Czech law enforcement to arrest Gupta and to seize Gupta's cellphones. (See Def. Reply at 3.) Although the Country Attachés coordinated with Czech law enforcement to arrest Gupta, (see Tr. 130:12-131:3), the Government's provisional warrant request for the purpose of extradition was made by the United States Justice Department's ("DOJ") Office of International Affairs ("OIA"), not the Country Attachés. (See Dkt. No. 68-1.) See United States v. Loera, No. 09 Cr. 466, 2017 WL 2821546, at *7 (E.D.N.Y. June 29, 2017) (finding that OIA was not part of the prosecution team despite OIA's request to extradite the defendant). And even though the provisional warrant request included that CA Brannon had knowledge of the investigation,

8

knowledge of an investigation is insufficient to become a member of the prosecution team. See Morgan, 302 F.R.D. at 305; Hiya, 2025 WL 1178115, at *4-5.

Gupta's arguments concerning his cellphones are also unpersuasive. According to Gupta, the Country Attachés made a strategic, investigative decision by requesting that Czech law enforcement seize Gupta's cellphones upon his arrest and by noting that if the cellphones were unlocked, that would be even better.[2] (See Def. Reply at 3.) Once Gupta was arrested by Czech law enforcement, Czech officers seized Gupta's cellphones and asked for the passcodes, which Gupta provided. (See Tr. 63:4-8, 73:23-74:19.) Gupta maintains that Czech law enforcement seized the cellphones and requested the corresponding passcodes in light of the comments made by one of the Country Attachés.

First, the Court notes that the provisional arrest warrant requested that Czech law enforcement seize, and eventually surrender, "all articles, instruments, objects of value, documents and other evidence relating to the offenses charged that are found in the possession of [Gupta] at the time of his arrest." (Dkt. No. 68-1 § 4.) See United States

---

[2] It is unclear which one of the Country Attachés made the comment about seizing Gupta's cellphones upon his arrest. (See Tr. 18:1-20, 91:3-25.) TFO Sandobal testified that the comment was made during a meeting between Czech law enforcement, the DEA Case Agents, and the Country Attachés on June 29, 2023, the day before Gupta's arrest. (See id. at 18:11-19:22.)

9

v. Chang, No. 18 Cr. 681, 2024 WL 1308775, at *3 (E.D.N.Y. Mar. 27, 2024) (seizure of the defendant's cellphone by South African law enforcement was proper, noting that the DOJ's provisional warrant for the defendant's arrest and extradition sought the seizure of all articles and instruments in the defendant's possession at the time of arrest). Given that the provisional arrest warrant alleged that Gupta was regularly communicating with a confidential source and undercover agent by phone, video call, and chat, (see Dkt. No. 68-1 § 3), it is unsurprising that Czech law enforcement sought to recover any cellphones in Gupta's possession at the time of his arrest, as well as the corresponding passcodes to ensure that the contents could be accessed.

Second, TFO Sandobal testified that no one from the DEA requested that Czech law enforcement seize Gupta's cellphones or request his passcodes. (See Tr. 11:17-22, 30:11-25). As TFO Sandobal recounted, one of the Country Attachés expressed during a meeting with the DEA Case Agents and Czech law enforcement that they hoped that Gupta would be cooperative and consent to a search of his cellphones, noting that if the cellphones were unlocked, that would be even better. (See id. at 18:1-14.) TFO Sandobal understood this remark to mean "[t]hat as part of an investigation, if someone is cooperative

10

and they willingly cooperate to unlock their phones and provide their passcode, that would be best for our investigation." (Id. at 18:22-24, 19:4-9.) Considering TFO Sandobal's testimony, the provisional arrest warrant's request that Czech law enforcement collect items in Gupta's possession at the time of arrest, and law enforcement's general interest in a defendant's electronic devices and their contents, the Court concludes that the comment by one of the Country Attachés regarding Gupta's cellphones was not a directive to Czech law enforcement, see United States v. Zhukov, 537 F. Supp. 3d 431, 433, 435-37 (E.D.N.Y. 2021), and that the comment is not indicative of any investigative responsibilities of the Country Attachés.

Gupta also argues that SA Catalano's communications with the confidential source supports the conclusion that SA Catalano has a key investigative role in the prosecution. (See Def. Reply at 3.) The Court disagrees. As TFO Sandobal testified, SA Catalano coordinated with the confidential source – who Gupta intended to meet in the Czech Republic – to ensure the confidential source's safety. (See Tr. 128:22-129:10.) Although the DEA Case Agents planned for Czech law enforcement to arrest Gupta when he arrived at the Prague airport, the confidential source was flown to Prague as an operational contingency in case Gupta managed to evade

11

law enforcement and exited the Prague airport. (See id.; see also Gov't Ex. 111.) There is no indication that SA Catalano worked with the confidential source to gather evidence in this case or that SA Catalano encouraged the confidential source to arrange the meeting with Gupta in the Czech Republic. (See also Dkt. No. 68-4 (messages between other DEA agents and the confidential source discussing the confidential source's correspondence with Gupta and arranging travel to the Czech Republic).) See Morell, 524 F.2d at 555. Accordingly, the Court concludes that SA Catalano is not a member of the prosecution team based on his correspondence with the confidential source.

Further, Gupta maintains that the Country Attachés are members of the prosecution team because they transported Gupta's cellphones from the Czech Republic to the United States, which is not a routine function of country liaisons. (See Def. Mot. at 2; Def. Reply at 3.) As a general matter, that a government agency shared evidence with prosecutors or another agency is insufficient to show a joint investigation. See United States v. Connolly, No. 16 Cr. 370, 2017 WL 945934, at *10 (S.D.N.Y. Mar. 2, 2017) ("The mere fact that the Government may have requested and received documents from [another agency] in the course of its investigation does not convert the investigation into a joint one." (citation

12

omitted)); see also Ingarfield, 2023 WL 3123002, at *5 (denying motion to compel where prosecutors for the Eastern District of New York ("EDNY") provided prosecutors for the Southern District of New York ("SDNY") access to their cooperating witness, allowed SDNY to attend three initial interviews with that witness, and turned over materials pursuant to a formal information request, because "[b]eyond those routine forms of coordination, there is no indication that the EDNY provided any additional support for the SDNY's investigative efforts").

Moreover, Gupta does not cite any authority for the proposition that it is unusual for country liaisons to transport evidence back to the United States when a defendant has been arrested abroad. See, e.g. United States v. Azocar, No. 21 Cr. 379, 2025 WL 1463088, at *3 (S.D.N.Y. May 22, 2025) (following the defendant's arrest and extradition to the United States, DEA agent serving as a country attaché transported items in the defendant's possession at the time of arrest, which included his passport, cellular phone, and other documents, to the United States). And in possessing and transporting Gupta's cellphones to the United States, the Country Attachés did not review any of the cellphones' contents, (see Gov't Opp'n at 5), further supporting that the

Country Attachés are not members of the prosecution team. <u>See</u> <u>Stewart</u>, 433 F.3d at 298-99.

Thus, for the various reasons discussed above, Gupta's motion to compel (Dkt. No. 95) is **DENIED**. The Clerk of Court is respectfully directed to close Dkt. No. 95.

**SO ORDERED.**

Dated:    27 August 2025
         New York, New York

_____
                Victor Marrero
                U.S.D.J.