**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

NIKHIL GUPTA,

              Defendant.

No. 23 Cr. 289 (VM)

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT NIKHIL GUPTA'S MOTIONS _IN LIMINE_**

<div style="margin-left:40%">

Nola B. Heller
Matthew Laroche
Peter Farag
Isabel C. Pitaro
Elyse J. Hain
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000

_Counsel for Defendant Nikhil Gupta_

</div>

# TABLE OF CONTENTS

**OVERVIEW** ......................................................................................................1

**PRELIMINARY STATEMENT** ..........................................................................1

**ARGUMENT** ...................................................................................................3

I.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM
     INTRODUCING EVIDENCE OF UNCHARGED CONDUCT ........................................3

     A.   The Uncharged Conduct Does Not Qualify as Direct Evidence.......................... 3

     B.   The Uncharged Conduct Is Inadmissible Under Rule 404(b)............................. 7

II.  THE COURT SHOULD PREVENT THE GOVERNMENT FROM
     INTRODUCING TESTIMONY CONCERNING THE PURPORTED
     MOTIVE OF GOI OR ITS INTELLIGENCE SERVICE ................................................10

     A.   Testimony Regarding GOI or the Research and Analysis Wing from
          the Government's Purported Expert Is Irrelevant and Inadmissible................. 10

III. THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM
     INTRODUCING RECORDS OBTAINED FROM CERTAIN GOOGLE
     ACCOUNTS ...........................................................................................................15

     A.   The Google Documents Must Be Excluded Because the Ownership
          of the Google Accounts Has Not Been Properly Authenticated........................ 16

     B.   The Content of the Google Documents Has Not Been Authenticated,
          Is Inadmissible Hearsay, and Must Be Excluded............................................... 19

IV.  THE COURT SHOULD NOT ALLOW THE GOVERNMENT TO SHOW THE
     JURY A VIDEO THAT ALLEGEDLY DEPICTS MR. NIJJAR AFTER HE
     WAS SHOT IN CANADA .......................................................................................22

     A.   The Nijjar Video Would Substantially Prejudice Mr. Gupta, Is
          Unnecessarily Cumulative, and Is Not Probative of Any Disputed Fact........... 23

     B.   If the Court Admits the Nijjar Video, the Court Should Issue a
          Limiting Jury Instruction. ................................................................................ 25

**CONCLUSION** ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases** ...................................................................................................................... **Page(s)**

*Am. Empire Surplus Lines Ins. v. J.R. Contracting & Env't Consulting, Inc.*,
    754 F. Supp. 3d 456 (S.D.N.Y. 2024) ................................................................. 11, 12

*AU New Haven, LLC v. YKK Corp.*,
    2019 WL 1254763 (S.D.N.Y. Mar. 19, 2019) ........................................................ 12

*Belabbas v. Inova Software Inc.*,
    2019 WL 13258047 (S.D.N.Y. Oct. 1, 2019) ................................................... 20, 21

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ............................................................................................. 12

*Fischer v. Forrest*,
    286 F. Supp. 3d 590 (S.D.N.Y. 2018) ................................................................... 21

*Island Intell. Prop. LLC v. Deutsche Bank AG*,
    2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) .......................................................... 12

*Manning v. N.Y. Univ.*,
    2001 WL 62872 (S.D.N.Y. Jan. 24, 2001) ............................................................ 14

*Novak v. Tucows, Inc.*,
    2007 WL 922306 (E.D.N.Y. Mar. 26, 2007) ......................................................... 21

*RVS Floor Decor, Ltd. v. Floor and Decor Outlets*,
    2023 WL 2403258 (E.D.N.Y. Mar. 7, 2023) ......................................................... 21

*Surface v. City of Flint*,
    2017 WL 3613967 (E.D. Mich. Aug. 23, 2017) ..................................................... 14

*United States v. Abdullah*,
    2024 WL 4519860 (S.D.N.Y. Oct. 16, 2024) ............................................. 17, 18, 19

*United States v. Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010) .................................................................................. 25

*United States v. Amirov*,
    2025 WL 660197 (S.D.N.Y. Feb. 28, 2025) ..................................................... 14, 15

*United States v. Browne*,
    834 F.3d 403 (3d Cir. 2016) ................................................... 16, 17, 18, 19, 20

i

*United States v. Carboni,*
204 F.3d 39 (2d Cir. 2000) ..................................................................................4

*United States v. Curley,*
639 F.3d 50 (2d Cir. 2011) ..................................................................................9

*United States v. Donovan,*
577 F. Supp. 3d 107 (E.D.N.Y. 2021) ............................................................4, 8

*United States v. Figueroa,*
618 F.2d 934 (2d Cir. 1980) ..............................................................................13

*United States v. Garg,*
2024 WL 1050994 (W.D. Wash. Mar. 11, 2024) ..............................................17

*United States v. Gatto,*
986 F.3d 104 (2d Cir. 2021) ..............................................................................13

*United States v. Graham,*
2019 WL 2366724 (S.D.N.Y. May 31, 2019) .....................................................7

*United States v. Gupta,*
747 F.3d 111 (2d Cir. 2014) ..............................................................................24

*United States v. Hunt,*
534 F. Supp. 3d 233 (E.D.N.Y. 2021) ..................................................16, 17, 19

*United States v. Jamil,*
707 F.2d 638 (2d Cir. 1983) ..............................................................................24

*United States v. Johnson,*
469 F. Supp. 3d 193 (S.D.N.Y. 2019) ..............................................................3, 4

*United States v. Kadir,*
718 F.3d 115 (2d Cir. 2013) ..............................................................................24

*United States v. McCallum,*
584 F.3d 471 (2d Cir. 2009) ............................................................................7, 9

*United States v. O'Connor,*
580 F.2d 38 (2d Cir. 1978) ................................................................................12

*United States v. Pedroza,*
750 F.2d 187 (2d Cir. 1984) ..............................................................................21

*United States v. Pugh,*
162 F. Supp. 3d 97 (E.D.N.Y. 2016) ............................................................23, 25

*United States v. Quattrone,*
    441 F.3d 153 (2d Cir. 2006).............................................................................13

*United States v. Quinones,*
    511 F.3d 289 (2d Cir. 2007)...............................................................................4

*United States v. Salameh,*
    152 F.3d 88 (2d Cir. 1998)................................................................................23

*United States v. Salim,*
    189 F. Supp. 2d 93 (S.D.N.Y. 2002)......................................................22, 23, 24

*United States v. Scott,*
    677 F.3d 72 (2d Cir. 2012).................................................................................7

*United States v. Sliker,*
    751 F.2d 477 (2d Cir. 1984)..............................................................................16

*United States v. Stein,*
    521 F. Supp. 2d 266 (S.D.N.Y. 2007)..................................................................8

*United States v. Townsend,*
    2007 WL 1288597 (S.D.N.Y. May 1, 2007)..........................................................4

*United States v. Tracy,*
    12 F.3d 1186 (2d Cir. 1993)..............................................................................22

*United States v. Vayner,*
    769 F.3d 125 (2d Cir. 2014)........................................................................17, 18

*United States v. Weber,*
    574 F. Supp. 3d 791 (D. Mont. 2021).................................................................20

**Statutes**

18 U.S.C. App. 3 ...............................................................................................13

18 U.S.C. § 1958................................................................................................1

18 U.S.C. § 1956................................................................................................1

18 U.S.C. § 2......................................................................................................1

**Other Authorities**

Fed. R. Evid. 401 .............................................................................................10

Fed. R. Evid. 402 .......................................................................................10, 12

Fed. R. Evid. 403 .............................................................................................10, 14, 23, 24

Fed. R. Evid. 404 .............................................................................................................7

Fed. R. Evid. 702 .....................................................................................................10, 11

Fed. R. Evid. 703 ...........................................................................................................12

Fed. R. Evid. 801 ...........................................................................................................21

Fed. R. Evid. 803 .....................................................................................................16, 19

Fed. R. Evid. 901 ...........................................................................................................19

Fed. R. Evid. 902 ...........................................................................................15, 16, 18, 20

## OVERVIEW

Defendant Nikhil Gupta respectfully submits this memorandum in support of his motions *in limine* seeking the following rulings in advance of his upcoming trial:

1. Evidence of any alleged prior bad acts by Mr. Gupta is inadmissible as direct evidence and under Rule 404(b) of the Federal Rules of Evidence;

2. Evidence concerning the purported motive of the government of India ("GOI") or any Indian government employee is inadmissible because it is irrelevant and unfairly prejudicial;

3. Documents obtained from certain Google accounts that the government contends belonged to co-defendant Vikash Yadav are inadmissible because they are being admitted for the truth of their contents, but the documents contain hearsay for which no exception applies; and

4. A video of an individual who was murdered in Canada is inadmissible because its probative value, if any, is substantially outweighed by the danger of unfair prejudice and would be unnecessarily cumulative.

## PRELIMINARY STATEMENT

Mr. Gupta is charged with murder-for-hire, conspiracy to commit murder-for-hire, and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1958, 1956(h), and 2. The government alleges that Mr. Gupta conspired with Mr. Yadav to arrange the killing of an individual ("Individual-1") associated with a U.S.-based separatist group that advocates for the creation of a Sikh homeland (the "Group"), and that Mr. Gupta communicated with a confidential source (the "CS") and an undercover cop (the "UC") regarding the alleged plan. This case should focus on Mr. Gupta's conduct and communications concerning the offenses for which he is charged. But the government intends to introduce a huge swath of irrelevant, unfairly prejudicial, and inadmissible evidence at trial.

*First*, the government intends to introduce an enormous amount of alleged prior bad acts evidence through the CS that ██████████████. This includes, among other things, ████████

████████████████████████████████████████████████████████

████ [1] To be clear, the government does not even contend that many of these bad acts actually occurred. Rather, the government wants to introduce Mr. Gupta's purported statements about potentially engaging in illegal activities as somehow relevant to this case. They are not. Allowing the government to elicit testimony from the CS about these purported statements, some of which occurred ████████████, would lead to numerous mini-trials about topics far afield from the charged offenses.

*Second*, the government intends to introduce evidence of GOI's purported motive in allegedly ordering Mr. Gupta to carry out the charged crimes. To be clear, the defense is not aware of any direct evidence supporting that GOI ordered Mr. Gupta to do anything or that Mr. Yadav was purportedly acting at the direction of GOI when he allegedly communicated with Mr. Gupta. Instead, the government wants to backdoor in motive evidence through a purported expert witness who has no direct knowledge of the charged offenses in this case. The government also seeks to connect Mr. Yadav to GOI through documents obtained from two Google accounts (collectively, the "Google Accounts") that are inadmissible hearsay. This is improper. GOI and Mr. Yadav are not on trial, and their motives are not transferable to Mr. Gupta.

*Finally*, the government should be prohibited from introducing a video of an individual who was murdered in Canada. Mr. Gupta is not charged with that crime, and there is no evidence that he was involved in its commission. The video has little, if any, probative value but its introduction would unfairly prejudice Mr. Gupta.

---

[1] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

For these reasons, as outlined further below, the Court should grant the defense's motions *in limine*.

## ARGUMENT

### I.     THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE OF UNCHARGED CONDUCT

The government seeks to introduce evidence falling into three broad categories of uncharged conduct allegedly committed by Mr. Gupta:  (1) discussions regarding potential ████████████████████████████████████████████; (2) a comment Mr. Gupta made about his ████████████████████████████████████; and (3) ███████████████████████████████████████████.  The government claims these allegations provide "background to the events alleged in the indictment."[2]  This evidence serves only to suggest that Mr. Gupta has a propensity to commit crimes, and will inflame the jury.  The evidence does not qualify as direct proof of the charged offenses.  It is not admissible under Rule 404(b), and, even if it was, the Court should exclude it under Rule 403.  Admission of this evidence will confuse the issues, mislead the jury, invite unfair prejudice, and create a substantial risk that the jury will convict Mr. Gupta for conduct not charged in the Second Superseding Indictment (the "Indictment").

#### A.     The Uncharged Conduct Does Not Qualify as Direct Evidence.

"Courts in this District employ a narrow construction in determining whether uncharged crimes are direct evidence of charged offenses."  *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019).  Actions and statements are admissible as direct evidence of the crimes charged only if they "arose out of the same transaction or series of transactions as the charged

---

[2] On September 8, 2025, the government sent the defense a Rule 404(b) notice regarding prior acts of Mr. Gupta that the government intends to present at trial (the "Rule 404(b) Notice").

offense," are "inextricably intertwined with the evidence regarding the charged offense," or are "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007). To show that uncharged conduct is inextricably intertwined with a charged offense, the government must show the evidence constitutes "crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed." *United States v. Townsend*, 2007 WL 1288597, at *2 (S.D.N.Y. May 1, 2007) (cleaned up). Courts regularly reject the claim that uncharged conduct becomes direct evidence simply because it involves the same participants or provides background context. *Johnson*, 469 F. Supp. 3d at 204. Here, none of the three categories of uncharged conduct that the government seeks to introduce qualifies as direct evidence.

*First*, Mr. Gupta's alleged discussions and meetings with the CS regarding ███████ ████████████████████████████████ are not direct evidence of the charged crimes. The alleged discussions—none of which actually resulted in ███████████████████— are both temporally and substantively unrelated to the charges at issue. They are not inextricably intertwined with the proof of the charged offense, nor are they necessary to "complete the story of the crime on trial." *Carboni*, 204 F.3d at 44. Courts have consistently rejected attempts to repackage separate, uncharged acts as "direct evidence," emphasizing that overlap in participants or similarity in conduct is not enough. *See United States v. Donovan*, 577 F. Supp. 3d 107, 114-15 (E.D.N.Y. 2021) (uncharged drug sales with the same undercover officer were not direct evidence because they were separate transactions and risked an improper propensity inference). Permitting the government to offer this evidence will also cause undue delay and distraction for the jury—the government lists ████████████████████████████████████████ ████████, which will transform this trial into a mini-trial on entirely unrelated subjects. Mr.

Gupta's prior alleged discussions and meetings with the CS regarding ███████████ ████████████ should not be admitted as direct evidence of the charged offenses.[3]

*Second*, the proposed testimony regarding Mr. Gupta's involvement in ██████████ ████████████ is even more attenuated. The government proposes to introduce evidence that Mr. Gupta was "██████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████" Rule 404(b) Notice at 2. The government has no independent proof of Mr. Gupta's alleged involvement in this entirely irrelevant conduct—it simply proposes to introduce the CS's testimony that Mr. Gupta mentioned it to him ████. Evidence regarding Mr. Gupta's alleged involvement in ███████████ that has nothing to do with the CS, GOI, Mr. Yadav, or Individual-1 has no place in this trial. The government should not be permitted to introduce such highly prejudicial evidence through an alleged offhand comment that Mr. Gupta made to the CS ██████████.

    The government may argue that testimony regarding Mr. Gupta's alleged involvement in these other crimes is admissible as direct evidence because it involves the same CS. But that fact alone does not transform the proposed testimony into direct evidence of the crimes charged. The relevant inquiry is whether the conduct is part of the same transaction or series of transactions,

---

[3] The defense understands from the government that the DEA may have destroyed at least one of the recorded conversations between Mr. Gupta and the CS relating to the conduct identified in the government's Rule 404(b) Notice because years had passed, and the investigation was closed. This underscores the age and irrelevance of this conduct. The government also should not be allowed to rely on historical evidence of this kind when the DEA intentionally destroyed at least one recording concerning the purported conduct at issue.

inextricably intertwined with the charged offense, or necessary to complete the story of the crime on trial. The evidence regarding these other crimes involves no shared actors beyond the CS, no shared methods, and no shared objectives with the charged conduct. The CS's mere presence does not create the required nexus; otherwise, any past conversation between Mr. Gupta and the CS, no matter how remote or unrelated, could be admitted as "background." Moreover, the purported testimony does not involve any *actual* criminal activity between Mr. Gupta and the CS, so it does not show that the two men had a relationship of trust and confidence that would explain why they chose to commit the charged conduct together. The testimony simply would demonstrate that Mr. Gupta and the CS allegedly *discussed* ██████████████████████, that Mr. Gupta allegedly ███████████████████████████, and that Mr. Gupta ████ ████████████████████████—an offer that was not accepted. Such idle talk is not criminal activity. It is proof of nothing, and can serve no purpose other than to impermissibly inflame the jury.

 *Third*, allegations that Mr. Gupta ██████████████████████████████ █ are also inadmissible as direct evidence. Although the government may argue that these ██████ are intertwined with the charged offense because they involve the same CS and occurred in a similar time frame, that connection is insufficient. The charged crime is a discrete murder-for-hire plot concerning Individual-1. ██████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████ The communications are vague and the government will have no witness to contextualize these communications.

██████████████████████████████████████████████████

████████████████████████████████████████

The government relies on a few statements, taken out of context, to claim that Mr. Gupta ████████████████████. Those statements are open to multiple interpretations, and any minimal probative value gained by their admission is substantially outweighed by their prejudicial effect. The jury does not need to learn about these ███████████████ to understand the charged conduct. Introducing them would risk turning the trial into a broad inquiry into statements that are open to multiple interpretations. These ███████████ are inadmissible as direct evidence.

**B.    The Uncharged Conduct Is Inadmissible Under Rule 404(b).**

Rule 404(b) bars the government from using evidence of crimes, wrongs, or other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). To admit other-acts evidence under Rule 404(b), the government must show the evidence is "(1) offered for a proper purpose; (2) relevant to a material issue in dispute; and (3) its probative value is not substantially outweighed by its prejudicial effect." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (cleaned up). Rule 404(b) "does not invite the government to offer, *carte blanche*, any prior act of the defendant in the same category of crime." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (cleaned up). The government bears the burden of establishing admissibility and must show a "clear connection between the prior act evidence and a disputed issue at trial." *United States v. Graham*, 2019 WL 2366724, at *6 (S.D.N.Y. May 31, 2019) (internal citations omitted), *aff'd*, 51 F.4th 67 (2d Cir. 2022); *see also United States v. Stein*, 521 F. Supp. 2d 266, 268 (S.D.N.Y. 2007). Each category of uncharged conduct the government seeks to introduce fails under Rule 404(b).

*First*, the proposed testimony regarding Mr. Gupta's discussions with the CS about ███████████████████████████ does not serve a proper non-propensity purpose.  The Indictment charges Mr. Gupta with murder-for-hire, murder-for-hire conspiracy, and money laundering conspiracy.  He is not alleged to have ███████████████ in connection with that.  Evidence that Mr. Gupta was allegedly interested in ███████████████████████████ does not illuminate his motive or intent regarding the charged offenses, nor does it demonstrate a pattern of similar criminal activity; it simply portrays him as a dangerous person predisposed to commit crime.[4]  *See Donovan*, 577 F. Supp. 3d at 116-17.  This evidence is inadmissible to prove Mr. Gupta's character or to suggest that he acted in accordance with that character.

*Second*, Mr. Gupta's alleged ███████████████████████████ ███████████████████████ is irrelevant to any disputed issue.  The evidence—which would be introduced solely by the CS recounting a statement Mr. Gupta made to him ███ ███████████████████████████ ███████████████████████████████.  This conduct bears absolutely no resemblance to the crimes on trial in this case, and has no bearing on whether Mr. Gupta may have been involved in them.  At most, the proposed testimony would paint Mr. Gupta as a career criminal, which is precisely the propensity inference Rule 404(b) prohibits.

*Third*, the allegations regarding ███████████████████████████ ███████████████ also fail Rule 404(b).  The government may contend that these ███████████ ███████████████████, but these are ███████████████████████████ ███████████████.  The charged conduct relates to a single, discrete murder-for-hire

---

[4] The government states in the Indictment that Mr. Gupta allegedly arranged the murder-for-hire plot with Mr. Yadav "in exchange for [Yadav's] assistance in securing the dismissal of a criminal case against [Mr.] Gupta in India."  Dkt. 28 ¶ 10.

plot.  The jury can evaluate intent and knowledge from the evidence of that plot itself, without

███████████████████████████████████████████████████.  Introducing those

allegations would not serve a legitimate purpose; it would only suggest Mr. Gupta must be guilty

because he ████████████████████████████████.  That is the precise propensity

inference Rule 404(b) forbids.

Even if the Court finds that the proposed evidence of uncharged conduct is offered for a

proper purpose and is relevant to a material issue in dispute, its probative value is substantially

outweighed by its prejudicial effect.  *See McCallum*, 584 F.3d at 475.  Evidence is unfairly

prejudicial when it "tends to have some adverse effect upon a defendant beyond tending to prove

the fact or issue that justified its admission into evidence."  *United States v. Curley*, 639 F.3d 50,

57 (2d Cir. 2011) (cleaned up).  Here, each category of uncharged conduct carries precisely that

risk.   Allegations  of  ████████████████████████████████████████████

████████  would shift the jury's focus away from the charged murder-for-hire scheme.  Testimony

regarding Mr. Gupta's ██████████████████████████████████████████

██████████████  would confuse and distract the jury and insert into the trial ██████████████

██████████████████████████████.  The uncharged alleged ████████████████

████████████████████████, creating an unacceptable danger that the jury may convict Mr.

Gupta not for the discrete plot charged, but for ██████████████████████████████

██████████████.

For the foregoing reasons, Mr. Gupta respectfully requests that the Court preclude the

government from introducing the above-described evidence of uncharged conduct as it is neither

direct evidence of the crimes at issue nor admissible under Rule 404(b).

## II.    THE COURT SHOULD PREVENT THE GOVERNMENT FROM INTRODUCING TESTIMONY CONCERNING THE PURPORTED MOTIVE OF GOI OR ITS INTELLIGENCE SERVICE

Pursuant to Rules 401, 402, 403, and 702, Mr. Gupta respectfully moves to preclude the government from introducing testimony from its proffered expert regarding any alleged motive or plot by GOI or its intelligence service to target Sikh individuals living abroad.  Whether GOI or its intelligence service had the motive that the government's expert and proffered witness intend to ascribe to it is not of consequence in determining the outcome of this case and will not assist the jury in analyzing the facts at issue.  *See* Fed. R. Evid. 401 (evidence is relevant if it "has any tendency to make a fact more or less probable" and if that fact is "of consequence in determining the action"); *id.* at 702(a) (expert testimony is appropriate if the expert's specialized knowledge will help the jury "understand the evidence or to determine a fact in issue").  Accordingly, the proffered testimony regarding GOI and its intelligence service is neither relevant nor proper expert testimony and is not admissible at trial.

Finally, if the Court does find that the government's proffered testimony is relevant, it should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  *See id.* at 403.

### A.    Testimony Regarding GOI or the Research and Analysis Wing from the Government's Purported Expert Is Irrelevant and Inadmissible.

At trial, the government intends to elicit testimony from Professor Nitasha Kaul regarding GOI that is irrelevant to Mr. Gupta or any purported motive he might have allegedly had to commit the charged offenses.  Professor Kaul intends to testify that:  (1) the Group and its leaders, who include Individual-1, have been publicly condemned by GOI for their separatist activities; (2) the Research and Analysis Wing ("RAW") is India's foreign intelligence service and its mission includes the suppression of Sikh separatists; (3) RAW "often selects officers from other GOI

agencies, including from the Central Reserve Police Force . . . to join its ranks"; (4) RAW engages in intelligence activities to further GOI's interests, including targeting its critics and repressing minorities; and (5) RAW uses "criminal proxies" to conduct operations in neighboring countries and has recently begun using those tactics in Western countries. Ex. 1. Professor Kaul's proposed testimony that RAW "often selects officers from other GOI agencies, including from the Central Reserve Police Force . . . to join its ranks" suggests that the government may also intend to use Professor Kaul's testimony to establish that Mr. Yadav is a member of RAW.

1. *The Proposed Expert Testimony Is Not Relevant or Helpful*

Professor Kaul's proffered testimony serves the sole purpose of establishing facts about, and a motive for, GOI and RAW to engage in the conduct alleged in the Indictment. But neither GOI nor RAW are on trial. The government does not allege that Mr. Gupta worked for either GOI or RAW, or that he shared any alleged motive they may have had to initiate the plot alleged in the Indictment. On the contrary, the Indictment makes clear that the government believes that Mr. Gupta's motive was to "secur[e] the dismissal of a criminal case" against him in India. Dkt. 28 ¶ 10. According to the Indictment, Mr. Yadav, whom the government appears to believe was affiliated with GOI and RAW, helped Mr. Gupta secure that dismissal in exchange for Mr. Gupta's assistance in the plot against Individual-1. Thus, any potential motive by GOI or RAW to kill Individual-1 is entirely irrelevant to the government's case as articulated in the Indictment.

Why Mr. Yadav, GOI, or RAW might have wanted to harm Individual-1—and whether Mr. Yadav was affiliated with RAW—does not help the jury determine a fact in issue in determining Mr. Gupta's guilt or innocence. *See* Fed. R. Evid. 702; *see also Am. Empire Surplus Lines Ins. v. J.R. Contracting & Env't Consulting, Inc.*, 754 F. Supp. 3d 456, 467 (S.D.N.Y. 2024) ("Rule 702's requirement that the proffered testimony assist the trier of fact goes primarily to

relevance because if it does not relate to any issue in the case, it is not relevant, and ergo, non-helpful.").  Further, unrelated plots against Sikhs alleged to have been ordered by GOI, or general allegations that GOI may have engaged in acts to condemn and silence Sikhs living abroad, are not probative of the "existence of a specific plan of which the charged acts were just a part."  *United States v. O'Connor*, 580 F.2d 38, 42 (2d Cir. 1978).  "Expert testimony" that, like Professor Kaul's proposed testimony, "does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (citation omitted).  Accordingly, Professor Kaul's testimony regarding GOI and RAW should be excluded under Rules 401, 402, and 702.

> 2.    *The Proposed Expert Testimony Is an Effort to Admit Inadmissible Hearsay*

Any testimony from Professor Kaul regarding GOI's alleged motive or suggesting that Mr. Yadav might be a member of RAW must also be excluded under Rule 703, as it would constitute inadmissible hearsay.  Experts may rely on hearsay evidence to form the basis of their opinions. Fed. R. Evid. 703.  However, experts may not serve as "mere conduits" to transmit inadmissible hearsay or as "vehicles for factual narrative" to the jury if the prejudicial effect of the testimony substantially outweighs its probative value.  *Island Intell. Prop. LLC v. Deutsche Bank AG*, 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012); *see also AU New Haven, LLC v. YKK Corp.*, 2019 WL 1254763, at *12 (S.D.N.Y. Mar. 19, 2019) ("Although experts are free to rely on otherwise inadmissible evidence, parties also cannot use experts as a Trojan Horse of hearsay.").

As further addressed herein, the government's only evidence that Mr. Yadav may have been a member of RAW—returns from two Google accounts—is inadmissible hearsay that does not fall under any hearsay exception.  *See infra* Section III.  Accordingly, any effort to use Professor Kaul as a conduit to introduce such evidence would be improper under Rule 703.

Additionally, the Court has granted the government's request to withhold certain materials under Section 4 of the Classified Information Procedures Act, 18 U.S.C. App. 3.  If the government was permitted to withhold documents related to GOI or RAW pertinent to Professor Kaul's proposed testimony, it should not be allowed to introduce her testimony on those topics.  Allowing the government to withhold such evidence and then use its expert as a vehicle to introduce the very same evidence in an effort to establish its desired factual narrative violates fundamental standards of fairness.  Professor Kaul should not be permitted to suggest in her testimony that Mr. Yadav may be a member of RAW.

3.    *The Proposed Expert Testimony Is Inadmissible Under Rule 403*

Even if the Court finds that Professor Kaul's proposed testimony is relevant (it is not), her testimony would be inadmissible under Rule 403.  *See, e.g.*, *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021) (court can exclude testimony from an otherwise qualified expert if "it finds the testimony would be unfairly prejudicial").  The limited (if any) probative value that her testimony might have is substantially outweighed by the dangers of confusing the issues, misleading the jury, and causing unfair prejudice.

*First*, Professor Kaul's testimony risks confusing the issues and misleading the jury by injecting into the case questions about why GOI might seek to target individuals living abroad, and the mechanisms GOI might use to do so.  Evidence is properly excluded if it creates a tendency "to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant."  *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).  Here, the proposed testimony would do just that. It would require discussion of details about sensitive political issues related to Indian sovereignty and about the complicated relationship between India and the "Western countries."  *See* Ex. 1 at

2.  Allowing Mr. Gupta's trial to become a forum to air inflammatory political disputes related to sovereignty and secession would be inappropriate, confusing, and misleading to the jury.  *See* Fed. R. Evid. 403.  It would also cause undue delay, turning the trial into a lengthy debate on complex topics that are entirely unrelated to Mr. Gupta's alleged motive for committing the crimes on trial. *Id.*

*Second*, allowing Professor Kaul to testify about general GOI plots to target political dissidents or shadowy sub-groups within GOI's intelligence network risks unfairly prejudicing Mr. Gupta to an extent that far outweighs any limited probative value the testimony might have.  *Id*. Mr. Gupta is not alleged to be a member of any Indian intelligence agency or GOI.  Extensive testimony surrounding actions taken by GOI to suppress dissent abroad will inevitably lead jurors to speculate about Mr. Gupta's relationship to GOI and will paint him in an unfairly prejudicial light.  The fact that Professor Kaul's testimony intends to cover "ethnoreligious" tensions, *see* Ex. 1, further heightens the risk of prejudice.  *See Manning v. N.Y. Univ.*, 2001 WL 62872, at *4 (S.D.N.Y. Jan. 24, 2001) (recognizing that allowing evidence of racial discrimination in a case about age discrimination would be inflammatory, heighten the risk of prejudice, and risk creating "'mini-trials' on tangential issues"); *Surface v. City of Flint*, 2017 WL 3613967, at *5 (E.D. Mich. Aug. 23, 2017) ("[T]opics involving racial animus tend to be emotionally and politically inflammatory generally, and so the evidence could encourage deliberation that is less than carefully considered for that reason.").  Accordingly, the probative value of any testimony about years of "state-sponsored vendettas against [Indian] citizens abroad is substantially outweighed by the potential undue and unfair prejudice" to Mr. Gupta and must be excluded.  *United States v. Amirov*, 2025 WL 660197, at *6 (S.D.N.Y. Feb. 28, 2025).

In *Amirov*, the court substantially granted a similar motion *in limine* that sought to exclude proposed expert testimony about a foreign government's history of targeting foreign dissidents. *Id.* at *5-6.  The court permitted the government to introduce only "a modicum" of the expert's proposed testimony, limiting the expert to speaking in only "the most general terms" about the foreign government's attitude towards dissidents over the last 50 years for no "more than about 15 minutes." *Id.* at *6-7.  In *Amirov*, however, the expert's proposed testimony was of some relevance because the government had also proffered testimony from lay witnesses on related topics (the foreign government's history of targeting dissidents).  Here, by contrast, the defense is not aware of any such lay testimony that will be introduced at trial.  Thus, the government's proposed expert testimony must be excluded under Rule 403.

## III.  THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING RECORDS OBTAINED FROM CERTAIN GOOGLE ACCOUNTS

The defense expects that the government will try to introduce documents obtained from the Google Accounts, pursuant to a search warrant (the "Google Documents").  The Google Documents should be excluded because they are not self-authenticating under Rule 902(11).  Additionally, the Google Documents cannot be admitted for the truth of what is asserted in them because that material is inadmissible hearsay.

The Google Documents include purported copies of passports and other forms of identification, photos, tax records, biographical data, and other records allegedly connected to Mr. Yadav, Mr. Gupta's co-defendant, who is not on trial.  The government will likely seek to introduce the Google Documents at trial to try to suggest that (i) Mr. Yadav owned the Google Accounts and used them to communicate, and (ii) Mr. Yadav is affiliated with GOI and RAW.  As set forth below, the government should not be permitted to do so.

**A.    The Google Documents Must Be Excluded Because the Ownership of the Google Accounts Has Not Been Properly Authenticated.**

As an initial matter, evidence must be properly authenticated before it is admitted.  *United States v. Sliker*, 751 F.2d 477, 497 (2d Cir. 1984).  Under Rule 902, certain types of evidence "are self-authenticating" such that "they require no extrinsic evidence of authenticity in order to be admitted."  This includes records of a regularly conducted activity certified by a custodian or another qualified person under Rule 902(11).

Here, the government may offer a custodial certification from Google, with accompanying testimony at trial, stating that the Google Documents are true and accurate copies of records and content maintained by Google, such as subscriber records, emails, and Google Drive content.  The certification may also state that the records were kept in the course of Google's regularly conducted activity, and made as a regular practice of that activity, thereby purporting to satisfy the business records hearsay exception under Rule 803(6).

The certification and accompanying testimony from a Google custodian allow the records to be admitted only on *narrow* grounds and for a *limited* purpose—to show that the records existed on the Google platform, were created, or were transmitted at a particular time.  *See United States v. Hunt*, 534 F. Supp. 3d 233, 254-55 (E.D.N.Y. 2021) (holding that "a business-records certification shows nothing more than that a record existed or was created at a particular time and that it was regularly kept in the course of a regularly conducted business activity").  As the Third Circuit held in the seminal case, *United States v. Browne*, "[a]t most, the records custodian employed by the social media platform can attest to the accuracy of only certain aspects of the communications exchanged over that platform, that is, confirmation that the depicted communications took place between certain Facebook accounts, on particular dates, or at particular times."  834 F.3d 403, 410-11 (3d Cir. 2016).

At trial, the government will likely seek to admit the records obtained from the Google Accounts for the truth of what is asserted in the Google Documents, not merely to establish the existence of the Google Documents stored and saved on the Google platform. But the Google custodian's certification and anticipated testimony are insufficient to authenticate the *identity* of the Google Accounts' owner(s) or to substantiate the *contents* of the records obtained from these accounts.

With respect to ownership, the relevance of the "records and content" obtained from the two Google Accounts hinges on the government's contention that these accounts purportedly *belonged* to Mr. Yadav. But courts have routinely rejected attempts to use certifications or declarations from online platforms to authenticate the ownership of online accounts, and the Court should not do so here. *See, e.g.*, *Browne*, 834 F.3d at 410 (holding that Facebook records custodian could not authenticate *authorship* of Facebook messages); *United States v. Garg*, 2024 WL 1050994, at *3 (W.D. Wash. Mar. 11, 2024) ("But authorship of accounts, and thus authorship of content, is not a fact that is verified within the 'regular course of business' by a records custodian."); *cf. United States v. Vayner*, 769 F.3d 125, 132-33 (2d Cir. 2014) (social media profile page was not properly authenticated because the relevance of that profile page turned on whether it was created by the defendant, but the government offered evidence only that the page existed and not that it belonged to the defendant); *Hunt*, 543 F. Supp. 3d 233, 254-55 (E.D.N.Y. 2021) (citing *Vayner* approvingly and holding that "[w]here, as here, social media content is offered for the purpose of establishing that a person made particular statements—that is, the relevance of the proffered evidence 'hinges on the fact of authorship'—a certification by a custodian in itself cannot be sufficient for purposes of authentication . . . .").

For example, in *United States v. Abdullah*, the government attempted to offer Google and Meta custodial certificates "to introduce 'self-authenticated' proof that [the defendant] and other individuals owned and used the accounts shown in the records." 2024 WL 4519860, at *2 (S.D.N.Y. Oct. 16, 2024). While the court recognized that the Google and Meta certifications could be used to establish that the "records [were] indeed Google and Meta records of accounts, communications, location data, etc., that were not subject to manipulation or inadvertent distortion," the court nonetheless rejected the government's attempt to rely on those certifications to establish the ownership of those accounts, stating that "the [g]overnment may not rely *solely* on certifications to authenticate and admit the *content* and *ownership* of the accounts." *Id.* at *2-3 (internal citation omitted).

Instead, as the Third Circuit remarked in *Browne*, where the relevance of a record maintained by an online platform "hinges on the fact of authorship," "[t]o authenticate the messages, the Government was . . . required to introduce enough evidence such that the jury could reasonably find, by a preponderance of the evidence, that [the defendant] and the victims authored the Facebook messages at issue." 834 F.3d at 410. That is, the government must introduce evidence showing that Mr. Yadav "created the [accounts] or [was] responsible for [their] contents." *Vayner*, 769 F.3d at 132.

The government can do no such thing here. Since Mr. Yadav will not be a witness at trial, the Google custodian's certification and expected testimony are likely the sole evidence that the government will provide to authenticate and admit the Google Documents. While it is true the custodial certification and testimony would be sufficient to authenticate certain platform-generated metadata, such as names and other contact information used to register the accounts, IP addresses, or various time stamps, pursuant to Rule 902(11), the certification in no way establishes that Mr.

Yadav is the *actual* owner of the accounts or authored the content obtained from the accounts. And as the *Abdullah* court held, "[s]hould the Government wish to authenticate the contents of the records as evidence of [the defendant] and his co-conspirators' accounts and activity, it will need to offer evidence showing that these particular individuals created the accounts or were responsible for their contents and activity."  2024 WL 4519860, at *2 (cleaned up).  But the government has not sufficiently met its burden of establishing Mr. Yadav's ownership of the Google Accounts with extrinsic evidence, as required under Rule 901.  Accordingly, the government will not be able to prove that Mr. Yadav is the owner or author of the documents obtained from those accounts, and it should thus be precluded from introducing the Google Documents at trial.

> **B.    The Content of the Google Documents Has Not Been Authenticated, Is Inadmissible Hearsay, and Must Be Excluded.**

Even if the government can authenticate the ownership of the Google Accounts, the Google Documents cannot be introduced as evidence because the government cannot authenticate the *content* of the records obtained from the Google Accounts.  The content is inadmissible hearsay and is not subject to any exception or exemption.

As with ownership of the Google Accounts, the government has failed to adduce any additional extrinsic evidence to authenticate and admit the *content* of the documents obtained from the two Google Accounts for their truth, beyond a single Google custodial certification, which is not sufficient.  As courts in this and other circuits have held, the contents of documents from online platforms are not self-authenticating business records, and must be authenticated through extrinsic evidence.  *See, e.g.*, *Hunt*, 534 F. Supp. 3d at 254 ("[T]o the extent the Government seeks to authenticate and admit the *content* of messages or videos on Defendant's social media accounts via certifications, such items are *not* self-authenticating business records that require no extrinsic evidence of authenticity other than a certification from a custodian to be admitted." (emphases

added)); *Browne*, 834 F.3d at 410-11 (Facebook chat logs were not admissible business records under Rule 803(6) because "Facebook does not purport to verify or rely on the substantive contents of the communications in the course of its business"); *United States v. Weber*, 574 F. Supp. 3d 791, 794 (D. Mont. 2021) ("The substantive content of the accounts at issue, such as messages, images, videos, were not made, nor relied on, by the providers for the purpose of conducting their respective businesses. . . .  As such, the Court concludes the substantive content of the records at issue are not self-authenticating business records under Rule 902(11).").

Here, the Google custodian's certification and expected testimony will not establish that the substantive content obtained from the Google Accounts, such as messages, images, or documents, was made or relied on by the providers of Google for the purpose of conducting its business.  Nor will the government put forth any witness with firsthand knowledge of the Google Documents who can attest to the truth and accuracy of the *substantive content* of the Google Documents.  For example, a picture of a person alleged to be Mr. Yadav wearing a military uniform was taken from one of the Google Accounts.  However, there is no obvious connection between the picture and Mr. Yadav beyond the fact that the photo was found in an account that the government believes belongs to Mr. Yadav.  And without extrinsic evidence, such as a testifying witness, the government cannot substantiate that the image is unaltered or link the image to Mr. Yadav.  The government will face similar issues with the other documents taken from the Google Accounts, such as alleged tax forms and resumes.  Since Mr. Yadav will not testify, the government will not be able to prove that he authored these documents, or that their content is legitimate. Because the content of the Google Documents cannot be authenticated, they must be excluded.

Moreover, even if the Court were to find that the Google Documents have been properly authenticated *and* that the government can establish that Mr. Yadav is the owner of the Google

Accounts, the Google Documents must still be excluded on hearsay grounds because they do not fall under any hearsay exception or exemption. *See Belabbas v. Inova Software Inc.*, 2019 WL 13258047, at *4 (S.D.N.Y. Oct. 1, 2019) (holding that emails between plaintiff and coworkers constituted inadmissible hearsay because the "emails are out-of-court statements offered by Defendants to prove the truth of the matter asserted," "are not statements made by a party opponent," and do not "fall under any of the exceptions to the ban on hearsay contained in Rules 803 and 804"); *RVS Floor Decor, Ltd. v. Floor and Decor Outlets*, 2023 WL 2403258, at *8 (E.D.N.Y. Mar. 7, 2023) ("The Court is unconvinced that the Instagram Post qualifies as a business record since the underlying source of the information, *i.e.*, the customer declarant, was not acting in the regular course of business when it made the complaint."); *Fischer v. Forrest*, 286 F. Supp. 3d 590, 603 (S.D.N.Y. 2018) (asserting that LinkedIn page was "plainly inadmissible for any purpose" because it had "not been authenticated" and "the statements in it are inadmissible hearsay").

Here, Mr. Yadav is a co-defendant who has not been arrested and is not standing trial, so any purported statements or communications by Mr. Yadav contained in these records are not party admissions that are admissible against Mr. Gupta under Rule 801(d)(2). *See United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984) (holding that one defendant's admissions are not admissible against another, even if the two are co-defendants in the same action); *Novak v. Tucows, Inc.*, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) ("Where postings from internet websites are *not* statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801.") (emphasis added).

Nor does the content fall within the ambit of the co-conspirator hearsay exception under Rule 801(d)(2)(E). Even assuming that Mr. Yadav is a co-conspirator of Mr. Gupta, to admit these records as non-hearsay statements under the co-conspirator hearsay exception, the government must demonstrate "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made *both* (a) during the course of *and* (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (emphases added).

The government has not and cannot satisfy its burden of showing that the statements contained in the Google Documents or that the Google Documents themselves were made *during and in furtherance of* the alleged conspiracy involving Mr. Gupta and Mr. Yadav. Documents that were not authored by Mr. Yadav, such as tax returns, must also be excluded on the same grounds. The government will not be putting forth any witnesses who have personal knowledge of these documents and their connection to the purported conspiracy, since Mr. Yadav will not testify. Absent such a showing, the government cannot admit the Google Documents for the truth of the matter asserted therein, and the Google Documents must be precluded.

For the foregoing reasons, Mr. Gupta respectfully requests that the Court preclude the government from introducing records obtained from the Google Accounts.

## IV.    THE COURT SHOULD NOT ALLOW THE GOVERNMENT TO SHOW THE JURY A VIDEO THAT ALLEGEDLY DEPICTS MR. NIJJAR AFTER HE WAS SHOT IN CANADA

The government has indicated that it intends to play for the jury a video that was allegedly taken of Hardeep Singh Nijjar (another member of the Group) shortly after Mr. Nijjar was shot in Canada (the "Nijjar Video"). The Court should exclude the Nijjar Video under Rule 403 because its limited probative value is substantially outweighed by the danger of unfair prejudice.

## A.    The Nijjar Video Would Substantially Prejudice Mr. Gupta, Is Unnecessarily Cumulative, and Is Not Probative of Any Disputed Fact.

Courts have wide discretion to exclude evidence under Rule 403 when its probative value is substantially outweighed by the danger of unfair prejudice. *See United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002). "[U]ndue prejudice" is interpreted as a tendency to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Pugh*, 162 F. Supp. 3d 97, 102 (E.D.N.Y. 2016) (internal citation omitted), *aff'd*, 937 F.3d 108 (2d Cir. 2019); *see also* Fed. R. Evid. 403, Adv. Comm. Notes. When faced with photographs or videos depicting graphic content, courts analyze whether the proffered evidence is "relevant to the resolution of some disputed point in a trial or otherwise aids a jury in a factual determination." *Salim*, 189 F. Supp. 2d at 98 (internal citation omitted); *see also United States v. Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (affirming the district court's decision to admit of photographs depicting victims killed in World Trade Center bombing because they were probative of the nature and location of the explosion which was disputed at trial).

There is nothing more dramatic or graphic to show a jury than a video relating to the murder of a human being. Here, the government proposes to show the jury such a video at Mr. Gupta's trial even though the murder in the video is not one he is alleged to have committed or conspired to commit. The government cannot be permitted to inflame the jury in this way.

The Nijjar Video begins by zooming in on the street to show several bullets on the floor before zooming in on a pickup truck. *See* Ex. 2. Inside the truck, an individual who the government alleges is Mr. Nijjar can be seen slumped over and covered in blood. The truck door windows are visibly shattered and the Nijjar Video's caption indicates that it was likely taken and shared on Snapchat, a social media platform that allows users to take and share disappearing photos

and videos.  There is no evidence—and the government has not suggested—that the video was taken by Mr. Gupta, nor is he seen or heard on the video.

The government may argue that the Nijjar Video is probative because Mr. Gupta was sent the video and later sent it to the UC and CS, and because Individual-1 and Mr. Nijjar knew each other.  But this is not sufficient to justify admitting evidence that may mislead the jury into believing that Mr. Gupta was the perpetrator of an uncharged and unrelated murder.  The Nijjar Video may help establish that Mr. Nijjar is deceased, but that is a fact that the defense does not dispute.  *See Salim*, 189 F. Supp. 2d at 98-99 (excluding photo of victim's bloodied and lacerated face following an invasive surgical procedure under Rule 403 because its evidentiary value to show that the victim was beaten was not a contested issue and would mislead the jury); *cf. United States v. Kadir*, 718 F.3d 115, 123 (2d Cir. 2013) (photos of defendant posing with weapons were admissible because the defendant's character as a peaceful religious fundraiser was a disputed issue at trial).

The government can make any point it seeks to make about the Nijjar Video's existence and the fact that it was allegedly sent to Mr. Gupta and then transmitted to others without needing to play the Nijjar Video for the jury.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by the danger . . . of needlessly presenting cumulative evidence.").  Testimony is properly excluded as cumulative if other witnesses with personal knowledge have already established the fact or the evidence plainly replicates other admitted evidence.  *See United States v. Gupta*, 747 F.3d 111, 131-33 (2d Cir. 2014); *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983) (recognizing that evidence is "cumulative when it replicates other admitted evidence").  Given the government intends to introduce two witnesses as Mr. Gupta's purported recipients of the Nijjar Video, the sole effect of

playing the Nijjar Video in court will be to inflame the passions of the jury. Any minimal relevance lies only in the Nijjar Video's transmission, making it appropriate for the court to exclude its graphic and prejudicial content.

**B.     If the Court Admits the Nijjar Video, the Court Should Issue a Limiting Jury Instruction.**

In the alternative, if the Court admits the Nijjar Video, then the defense respectfully requests that it give the jury a limiting instruction to reduce the risk of undue prejudice, and as courts in this circuit routinely do at defendants' request. *See United States v. Abu-Jihaad*, 630 F.3d 102, 134 n.30 (2d Cir. 2010); *Pugh*, 162 F. Supp. 3d at 118.

## CONCLUSION

For the foregoing reasons, Mr. Gupta's motions *in limine* should be granted.

 Dated:   September 22, 2025

Respectfully submitted,

Nola B. Heller
Matthew Laroche
Peter Farag
Isabel C. Pitaro
Elyse J. Hain
MILBANK LLP
55 Hudson Yards
New York, New York 10001
212-530-5000

*Counsel for Defendant Nikhil Gupta*