TREATIES AND OTHER INTERNATIONAL ACTS SERIES 12928

# MUTUAL LEGAL ASSISTANCE

**Treaty Between the**
**UNITED STATES OF AMERICA**
**and the CZECH REPUBLIC**

Signed at Washington February 4, 1998

NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."

# CZECH REPUBLIC

## Mutual Legal Assistance

*Treaty signed at Washington February 4, 1998;*
*Transmitted by the President of the United States of America to the Senate April 14, 1998 (Treaty Doc. 105-47, 105th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations October 14, 1998 (Senate Executive Report No. 105-22, 105th Congress, 2d Session);*
*Advice and consent to ratification by the Senate October 21, 1998;*
*Ratified by the President January 20, 1999;*
*Ratified by the Czech Republic December 22, 1999;*
*Ratifications exchanged at Prague March 6, 2000;*
*Entered into force May 7, 2000.*

# TREATY
# BETWEEN
# THE UNITED STATES OF AMERICA
# AND
# THE CZECH REPUBLIC
# ON
# MUTUAL LEGAL ASSISTANCE
# IN CRIMINAL MATTERS

## TABLE OF CONTENTS


| | |
|---|---|
| Article 1 | Scope of Assistance |
| Article 2 | Central Authorities |
| Article 3 | Denial of Assistance |
| Article 4 | Form, Content, and Language of Requests |
| Article 5 | Execution of Requests |
| Article 6 | Costs |
| Article 7 | Limitation on Use |
| Article 8 | Alteration of Conditions |
| Article 9 | Evidence in the Requested State |
| Article 10 | Official Records |
| Article 11 | Appearance Outside the Requested State |
| Article 12 | Temporary Transfer of Persons in Custody |
| Article 13 | Transit of Persons in Custody |
| Article 14 | Location or Identification of Persons or Items |
| Article 15 | Service of Documents |
| Article 16 | Search and Seizure |
| Article 17 | Return of Items |
| Article 18 | Forfeiture |
| Article 19 | Restitution |
| Article 20 | Criminal Fines |
| Article 21 | Compatibility with Other Treaties |
| Article 22 | Consultation |
| Article 23 | Ratification, Entry Into Force, and Termination |

**The United States of America and the Czech Republic,**

**Desiring to provide more effective cooperation between the two States through mutual legal assistance in criminal matters,**

**Have agreed as follows:**

**Article 1**

**Scope of Assistance**

**1. The Contracting States shall provide mutual assistance, in accordance with the provisions of this Treaty, for criminal proceedings, including investigations to verify the commission of offenses, to gather evidence of offenses, and to prosecute offenses, the punishment of which, at the time of the request for assistance, would fall within the jurisdiction of the judicial authorities of the Requesting State. The Contracting States shall also provide such assistance for forfeiture and other proceedings related to criminal offenses.**

**2. Assistance shall include:**

**(a) locating or identifying persons or items;**

**(b) serving documents;**

**(c) taking the testimony or statements of persons;**

**(d) transferring persons in custody for testimony or other purposes;**

**(e) providing documents, records, and articles of evidence;**

**(f) executing requests for searches and seizures;**

**(g) immobilizing assets;**

**(h) assisting in proceedings related to forfeiture of assets, restitution, and criminal fines; and**

**(i) providing any other assistance consistent with the laws of the Requested State.**

**3. The Requested State shall provide assistance without regard to whether the conduct that is the subject of the request would constitute an offense under the laws of the Requested State, except that the Requested State may refuse to comply in whole or in part with a request for assistance to the extent that the conduct would not constitute an offense under its laws and the execution of the request would require a court order. However, the Requested State shall make every effort to approve a request for assistance requiring such a court order and shall grant assistance where the facts stated in the**

request establish a reasonable suspicion that the conduct described, if it had occurred in the Requested State, would constitute an offense under its laws.

4. This Treaty is intended solely for mutual legal assistance between the Contracting States. The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence or to impede the execution of a request.

## Article 2
## Central Authorities

1. The Contracting States shall seek and obtain assistance through their Central Authorities. The Central Authority for the United States shall be the Attorney General or such persons in the Department of Justice as the Attorney General designates. The Central Authority for the Czech Republic shall be the Office of the Prosecutor General and the Ministry of Justice.

2. The Central Authority for the United States will make requests on behalf of prosecutors, investigators with criminal law enforcement jurisdiction, and agencies and entities with specific statutory or regulatory authority to refer matters for criminal prosecution. The Central Authority for the Czech Republic will make requests on behalf of prosecutors and courts.

3. The Central Authority for the Requesting State shall use its best efforts to ensure that a request is not made where, in its view:

(a) the offense on which the request would be based does not have serious consequences; or

(b) the extent of the assistance to be requested would be unreasonable in view of the sentence expected upon conviction.

4. The Central Authorities shall communicate with one another directly for the purposes of this Treaty.

## Article 3
## Denial of Assistance

1. The Central Authority of the Requested State may deny assistance if:

(a) the request relates to an offense under military law that would not be an offense under ordinary criminal law applicable generally;

(b) the request relates to a political offense;

(c) the execution of the request is likely to prejudice the sovereignty, security, order public, or similar essential interests of the Requested State; or

(d) the request does not conform to the requirements of the Treaty.

2. Before denying assistance pursuant to this Article, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

3. If the Central Authority of the Requested State denies assistance, it shall inform the Central Authority of the Requesting State of the reasons for the denial.

## Article 4

## Form, Content, and Language of Requests

1. A request for assistance shall be in writing except that the Central Authority of the Requested State may accept a request in another form in urgent situations. In any such situation, the request shall be confirmed in writing within ten days unless the Central Authority of the Requested State agrees otherwise. The request, including any attachments, shall be in the language of the Requested State unless agreed otherwise. The Requested State shall have no obligation to translate the response, including any attachments.

2. The request shall include the following:

(a) the identity of the authority initiating the request;

(b) a description of the factual basis of each offense, the text of the applicable provisions of law containing the elements constituting each offense, and the nature and stage of the proceeding;

(c) a description of the evidence, information, or other assistance sought; and

(d) a statement of the purpose for which the evidence, information, or other assistance is sought.

3. To the extent necessary and possible, a request shall also include:

(a) information on the identity and location of any person from whom evidence is sought;

(b) information on the identity and location of a person to be served, that person's relationship to the proceeding, and the manner in which service is to be made;

(c) information on the identity and suspected location of a person or item to be located;

(d) a precise description of the place or person to be searched and of the item to be seized;

(e) a description of any particular procedure to be followed in executing the request;

(f) a description of the manner in which any testimony or statement is to be taken and recorded;

(g) a description of the testimony or statement sought, which may include a list of questions to be asked of a person;

(h) information as to the allowances and expenses to which a person asked to appear in the Requesting State will be entitled; and

(i) any other information that may be brought to the attention of the Requested State to facilitate its execution of the request.

## Article 5
## Execution of Requests

1. The Central Authority of the Requested State shall promptly execute a request or, when appropriate, transmit it to the authority having jurisdiction to do so. The competent authorities of the Requested State, including courts, shall have the authority to issue such orders to execute a request under this Treaty as are authorized under the laws of the Requested State with respect to domestic proceedings and shall do everything in their power to execute the request.

2. When necessary, the request shall be presented to the appropriate authority by the persons appointed by the Central Authority of the Requested State.

3. A request shall be executed in accordance with the laws of the Requested State except to the extent that this Treaty provides otherwise. If the Requesting State requests execution in accordance with the procedures of the Requesting State and provides legal reference thereto, the Requested State shall so execute unless such execution would violate the laws of the Requested State.

4. If the Central Authority of the Requested State determines that execution of a request would interfere with an ongoing criminal proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State. If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

5. The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State. If the request cannot be executed without breaching the requested confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

6. The Central Authority of the Requested State shall respond to reasonable requests by the Central Authority of the Requesting State on progress toward execution of the request.

7. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request. If execution of the request is delayed or postponed, the Central Authority of the Requested State shall inform the Central Authority of the Requesting State of the reasons for the delay or postponement.

## Article 6
## Costs

1. The Requested State shall pay all costs relating to the execution of a request except for the following:

(a) the fees of experts;

(b) the costs of interpretation, translation and transcription; and

(c) the allowances and expenses related to travel of persons travelling outside the local judicial district in the Requested State for the convenience of the Requesting State or pursuant to Articles 11, 12, and 13.

2. If during the execution of a request it becomes apparent that complete execution will entail expenses of an extraordinary nature, the Central Authorities shall consult to determine the terms and conditions under which execution may continue.

**Article 7**

**Limitation on Use**

**The Central Authority of the Requested State may require that the Requesting State not use any information or evidence obtained under this Treaty other than in the proceeding described in the request without the prior consent of the Central Authority of the Requested State. In such situations, the Requesting State shall comply with the requirement.**

**Article 8**

**Alteration of Conditions**

**1. To the extent that the Constitution of the Requesting State imposes an obligation to disclose information provided under this Treaty and such disclosure would conflict with a condition imposed by the Requested State, the Central Authority of the Requesting State shall consult with the Central Authority of the Requested State to consider whether the condition may be modified to permit such disclosure. The Central Authority of the Requested State shall use its best efforts to permit such modification; with respect to a condition imposed pursuant to Article 7, it shall permit such disclosure unless prohibited by its law.**

**2. Information or evidence that has been used appropriately in the proceeding for which it was provided and in the course of such use has been made public may be used for any purpose.**

**Article 9**

**Evidence in the Requested State**

**1. A person in the Requested State from whom evidence is requested pursuant to this Treaty shall be compelled, if necessary, to appear and either testify or provide a statement, or produce items, including documents, records, and articles of evidence. A person other than an accused who gives false testimony, either orally or in writing, in execution of a request shall be subject to prosecution in the Requested State in accordance with the criminal laws of that State.**

2. Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or statement or the production of evidence pursuant to this Article.

3. The Requested State shall allow the presence of such persons as specified in the request during the execution of the request and shall allow such persons to specify questions to be posed to the person giving the testimony or statement or producing the evidence.

4. If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, the testimony, statement, or other evidence shall nonetheless be taken and provided, together with the claim, to the Central Authority of the Requesting State for resolution of the claim by the competent authorities of that State.

5. Evidence produced in the Requested State pursuant to this Article or that is the subject of testimony or a statement taken under this Article shall, upon request, be authenticated by an attestation, including, in the case of business records, authentication in the manner indicated in Form A appended to this Treaty. The absence or nonexistence of such records shall, upon request, be certified through the use of Form B appended to this Treaty. Records authenticated by Form A, or Form B certifying the absence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

## Article 10
## Official Records

1. The Requested State shall provide the Requesting State with copies of publicly available records in the possession of a government department or agency or a court in the Requested State. Publicly available records are documents, records, or information in any form that are available to members of the public of the Requested State generally or upon compliance with a legal condition.

2. The Requested State may provide copies of any records, including documents or information in any form, that are in the possession of a government department or agency or a court in that State, but that are not publicly available records, to the same extent and under the same conditions as such copies would be available to its own law enforcement or judicial authorities. The Requested State may in its discretion deny a request pursuant to this paragraph entirely or in part.

**3. Records of a government department or agency or a court produced pursuant to this Article shall, upon request, be authenticated by an official responsible for maintaining them through the use of Form C appended to this Treaty. The absence or nonexistence of such records shall, upon request, be certified through the use of Form D appended to this Treaty. Records authenticated by Form C, or Form D certifying the absence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.**

## Article 11
## Appearance Outside The Requested State

**1. The Requesting State may request the appearance in the Requesting State or in a third State of any person to assist in criminal proceedings or other proceedings related to criminal offenses. The Requested State shall invite the person to appear and shall inform the Requesting State of the person's response.**

**2. The Requesting State shall indicate the extent to which the expenses will be paid. A person who agrees to appear may ask that the Requesting State advance money to cover these expenses. This advance may be provided through the Embassy or a consulate of the Requesting State.**

**3. An invited person may not be prosecuted, detained, or subjected to any restriction of personal liberty in the Requesting State by reason of acts or convictions that preceded that person's departure from the Requested State. The Central Authority of the Requesting State shall have discretion to extend safe conduct to the effects of non-criminal proceedings or to limit the application of safe conduct. Any such extension or limitation of safe conduct shall be communicated to the invited person prior to that person's travel to the Requesting State.**

**4. The safe conduct provided in the above paragraph shall cease seven days after the person has been notified that the person's presence is no longer required or when the person, having left the Requesting State, voluntarily returns.**

## Article 12
## Temporary Transfer Of Persons in Custody

**1. A person in the custody of the Requested State whose presence in the Requesting State or in a third State is sought for purposes of assistance under this**

Treaty shall be transferred temporarily from the Requested State to the Requesting State or to a third State for that purpose if the person consents and if the Central Authorities of the Requesting and the Requested States agree.

2. A person in the custody of the Requesting State whose presence in the Requested State is sought for purposes of assistance under this Treaty may be transferred from the Requesting State to the Requested State if the person consents and if the Central Authorities of both States agree.

3. For purposes of this Article:

(a) the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise agreed by the Central Authorities of both States;

(b) the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by the Central Authorities of both States;

(c) the receiving State shall not require the sending State to initiate extradition proceedings or any other proceedings for the return of the person transferred;

(d) time served in the custody of the receiving State by the person transferred shall be credited toward the service of the sentence imposed in the sending State; and

(e) where the receiving State is a third State, the Requesting State shall make all arrangements necessary to meet the requirements of this paragraph.

4. Safe conduct shall be provided in accordance with Article 11, paragraphs 3 and 4, except that the person shall be kept in custody for the offense for which the person is incarcerated in the sending State.

## Article 13
## Transit of Persons in Custody

1. The Requested State may authorize the transit through its territory of a person held in custody by a third State whose personal appearance has been requested by the Requesting State to give testimony or evidence or otherwise provide assistance in criminal proceedings or other proceedings related to criminal offenses.

2. The Requested State shall have the authority and the obligation to keep the person in custody during transit.

3. Each Contracting State may refuse to grant transit of its nationals.

### Article 14
### Location or Identification of Persons or Items

If the Requesting State seeks the location or identity of persons or items in the Requested State, the Requested State shall use its best efforts to ascertain the location or identity.

### Article 15
### Service of Documents

1. The Requested State shall use its best efforts to effect service of any document relating, in whole or in part, to any request for assistance made by the Requesting State under the provisions of this Treaty.

2. The Central Authority of the Requesting State shall transmit any request for the service of a document requiring the appearance of a person before an authority in the Requesting State within a reasonable time in advance.

3. The Central Authority of the Requested State shall return a proof of service in the manner specified in the Request. Acceptable means of proving service may include:

(a) the signature of the person upon whom service has been requested acknowledging receipt of service; or

(b) a report of an official of the Requested State describing the effort to obtain the signature of the person upon whom service has been requested who has refused either to accept service or to acknowledge receipt thereof, and specifying any reasons given for such refusal.

**Article 16**

**Search and Seizure**

**1. The Requested State shall execute a request for the search, seizure, and transfer of any item to the Requesting State if the request includes the information justifying such action under the laws of the Requested State.**

**2. Upon request by the Central Authority of the Requesting State, every official who has had custody of a seized item shall certify, through the use of Form E appended to this Treaty, the identity of the item, the integrity of its condition, and the continuity of its custody. The certificates shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.**

**3. The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed necessary to protect third state interests in the item to be transferred.**

**Article 17**

**Return of Items**

**At or before the transfer of an item, including a document, record, or article of evidence, furnished to the Requesting State in execution of a request under this Treaty, the Central Authority of the Requested State may require that the Requesting State return such item as soon as possible. A request for return of an item not made until after transfer of the item shall be complied with by the Requesting State to the extent feasible.**

**Article 18**

**Forfeiture**

**1. Upon request, the Requested State shall use its best efforts to ascertain whether proceeds or instrumentalities of an offense, potentially forfeitable or otherwise subject to seizure under the laws of either State, are located in the Requested State. The request shall state the grounds for believing that such proceeds or instrumentalities are so located. The Requested State shall inform the Requesting State of the results of its inquiry.**

**2. If, pursuant to its inquiry, the Requested State locates proceeds or instrumentalities of an offense, it may, to the extent permitted by its laws, take protective measures, including seizure and temporary immobilization, to ensure that such proceeds or instrumentalities are available for forfeiture.**

**3. The Requested State may, to the extent permitted by its laws, give effect to any final legal determination given in the Requesting State forfeiting such proceeds or instrumentalities, or initiate its own legal action for the forfeiture of such assets.**

**4. The Contracting State that enforces a final legal determination relating to proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws. Either Contracting State, to the extent permitted by its laws and upon such terms as it deems to be appropriate, giving due consideration to relevant factors including the extent of cooperation provided by the other Contracting State, may transfer all or part of such assets, or the proceeds of their sale, to the other Contracting State.**

## Article 19
## Restitution

**The Contracting States shall assist each other to the extent permitted by their respective laws to facilitate restitution. Assistance shall include transfer of items obtained through criminal activity.**

## Article 20
## Criminal Fines

**The Contracting States shall assist each other to the extent permitted by their respective laws in proceedings regarding criminal fines. Assistance shall not include collection of criminal fines.**

## Article 21
## Compatibility With Other Treaties

**This Treaty is not intended to prevent the Contracting States from seeking and granting assistance to each other through the provisions of other international agreements or domestic laws.**

## Article 22

## Consultation

The Central Authorities shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty. The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

## Article 23

## Ratification, Entry Into Force, and Termination

1. This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Prague as soon as possible.

2. This Treaty shall enter into force two months after the exchange of instruments of ratification.

3. This Treaty shall apply to any requests presented after its entry into force even if the relevant acts or omissions occurred before that date.

4. This Treaty shall remain in force until terminated by either Contracting State by means of written notice to the other Contracting State. Termination shall take effect six months following the date of notification.

IN WITNESS WHEREOF, the undersigned, being duly authorized for this purpose, have signed this Treaty.

DONE at Washington, this fourth day of February 1998 in duplicate, in the English and Czech languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:

FOR THE CZECH REPUBLIC:

**Form A**

**CERTIFICATION OF BUSINESS RECORDS**

**I, __________(name)____________, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:**

**I am employed by/associated with ____________(name of business from which documents are sought)____________ in the position of ____________(business position or title)____________ and by reason of my position am authorized and qualified to make this attestation.**

**Each of the records attached hereto is a record in the custody of the above-named business that:**

**(A) was made, at or near the time of the occurrence of the matters set forth therein [circle appropriate number(s)]:**

**(1) by a person with knowledge of those matters;**

**(2) from information transmitted by a person with knowledge of those matters;**

**(3) by a person who otherwise had a duty to record information concerning such matters on behalf of the above-named business;**

**(B) was kept in the course of a regularly conducted business activity;**

**(C) was made by the business as a regular practice; and,**

**(D) if not an original record, is a duplicate of the original.**

____________(date of execution)____________

____________(country of execution)____________

____________(signature)____________

## Form B

## CERTIFICATION OF ABSENCE OF BUSINESS RECORDS

I, ____________(name)______________, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:

I am employed by/associated with _____________(name of business from which documents are sought)_______________ in the position of _____________(business position or title)________________ and by reason of my position am authorized and qualified to make this attestation.

As a result of my employment/association with the above-named business, I am familiar with the business records it maintains. The business maintains business records that are:

(A) made, at or near the time of the occurrence of the matters set forth therein [circle appropriate number(s)]:

(1) by a person with knowledge of those matters;

(2) from information transmitted by a person with knowledge of those matters;

(3) by a person who otherwise had a duty to record information concerning such matters on behalf of the above-named business;

(B) kept in the course of a regularly conducted business activity; and

(C) made by the business as a regular practice.

Among the records so maintained are records of individuals and entities that have accounts or otherwise transact business with the above-named business. I have made or caused to be made a diligent search of those records. No records have been found reflecting any business activity between the business and the following individuals and entities:

If the business had maintained an account on behalf of or had participated in a transaction with any of the foregoing individuals or entities, its business records would reflect that fact.

_______________(date of execution)_______________

_______________(country of execution)_______________

_______________(signature)_______________

**Form C**

**CERTIFICATION OF OFFICIAL RECORDS**

**I, __________(name)__________, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:**

1. **__________(name of public authority)__________ is a government office or agency of __________(country)__________ and is authorized by law to maintain official records setting forth matters required by law to be reported and recorded or filed;**

2. **my position with the above-named public authority is __________(official title)__________;**

3. **in my official capacity I have caused the production of true and accurate copies of records maintained by that public authority; and**

4. **those copies are described below and attached.**

**Description of records:**

__________(signature)__________

*(Official Seal or Stamp)*

__________(date)__________

**Form D**

**CERTIFICATION OF ABSENCE OF OFFICIAL RECORDS**

**I, __________(name)__________, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:**

1. **__________(name of public authority)__________ is a government office or agency of __________(country)__________ and is authorized by law to maintain official records setting forth matters that are required by law to be reported and recorded or filed;**

2. **records of the type described below set forth matters that are required by law to be reported and recorded or filed, and such matters regularly are recorded or filed by the above-named public authority;**

3. **my position with the above-named public authority is __________(official title)__________;**

4. **in my official capacity I have made, or caused to be made, a diligent search of the above-named public authority's records for the records described below; and;**

5. **no such records have been found to exist therein.**

**Description of records:**

**__________(signature)__________**

***(Official Seal or Stamp)***

**__________(date)__________**

**Form E**

**CERTIFICATION WITH RESPECT TO SEIZED ITEMS**

**I, __________(name)__________, having been advised as a witness that a false attestation subjects me to a penalty of criminal punishment, attest as follows:**

1. **My position with the Government of __________(country)__________ is __________(official title)__________;**
2. **I received custody of the items listed below from __________(name of person)__________ on __________(date)__________ at __________(place)__________; and**
3. **I relinquished custody of the items listed below to __________(name of person)__________ on __________(date)__________ at __________(place)__________ in the same condition as when I received them (or, if different, as noted below).**

**Description of items:**

**Changes in condition while in my custody:**

__________(date of execution)__________

__________(country of execution)__________ ***(Official Seal or Stamp)***

__________(signature)__________

# SMLOUVA
# MEZI SPOJENÝMI STÁTY AMERICKÝMI
# A ČESKOU REPUBLIKOU
# O VZÁJEMNÉ PRÁVNÍ POMOCI
# V TRESTNÍCH VĚCECH

# SEZNAM OBSAHU


| | |
|---|---|
| Článek 1 | Rozsah pomoci |
| Článek 2 | Ústřední orgány |
| Článek 3 | Odmítnutí pomoci |
| Článek 4 | Forma, obsah a jazyk žádostí |
| Článek 5 | Vyřízení žádostí |
| Článek 6 | Náklady |
| Článek 7 | Omezení při použití |
| Článek 8 | Změna podmínek |
| Článek 9 | Dokazování v dožádaném státě |
| Článek 10 | Úřední záznamy |
| Článek 11 | Dostavení se mimo dožádaný stát |
| Článek 12 | Dočasné předávání osob nacházejících se ve vazbě a výkonu trestu |
| Článek 13 | Průvoz osob nacházejících se ve vazbě a výkonu trestu |
| Článek 14 | Vypátrání pobytu a zjištění totožnosti osob a věcí |
| Článek 15 | Doručování písemností |
| Článek 16 | Prohlídka a zajištění |
| Článek 17 | Vrácení věcí |
| Článek 18 | Propadnutí |
| Článek 19 | Odškodnění |
| Článek 20 | Peněžité pokuty |
| Článek 21 | Slučitelnost s jinými smlouvami |
| Článek 22 | Konzultace |
| Článek 23 | Ratifikace, nabytí platnosti a ukončení platnosti |
| Formuláře | |

Spojené státy americké a Česká republika

přejíce si poskytovat účinnější spolupráci mezi dvěma státy vzájemnou právní pomocí v trestních věcech,

se dohodly takto:

## Článek 1
## Rozsah pomoci

1. Smluvní strany si poskytují vzájemnou pomoc v souladu s ustanoveními této smlouvy pro účely trestního řízení, včetně vyšetřování za účelem ověření, zda byl spáchán trestný čin, shromažďování důkazů o trestných činech, jejichž trestání v době žádosti o pomoc by mohlo náležet do pravomoci justičních orgánů dožadujícího státu. Smluvní strany budou rovněž poskytovat takovou pomoc v řízeních za účelem propadnutí a jiných řízeních vztahujících se k trestným činům.

2. Pomoc zahrnuje:

(a) pátrání po pobytu a zjišťování totožnosti osob a věcí,

(b) doručování písemností,

(c) získávání svědectví nebo prohlášení osob,

(d) předávání osob ve vazbě k podání svědectví nebo za jiným účelem,

(e) poskytování písemností, záznamů a důkazních prostředků,

(f) provádění žádostí o domovní a osobní prohlídku a zabavení,

(g) zajištění majetku,

(h) pomoc v řízeních vztahujících se k propadnutí majetku, navrácení věcí a peněžitým trestům,

(i) poskytování jiné pomoci v souladu s právním řádem dožádaného státu.

3. Dožádaný stát poskytuje pomoc bez ohledu na to, zda jednání, které je předmětem dožádání, by bylo trestným činem podle právního řádu dožádaného státu s výjimkou toho, že dožádaný stát může odmítnout vyřízení dožádání o pomoc zcela nebo zčásti tehdy, pokud by jednání nebylo trestným činem podle jeho právního řádu a provedení žádosti by vyžadovalo příkaz soudu. Dožádaný stát však vynaloží veškeré úsilí, aby vyhověl žádosti o pomoc vyžadující takový příkaz soudu a poskytne pomoc tam, kde skutečnosti uvedené v žádosti vzbuzují důvodné podezření, že popsané jednání, pokud by k němu došlo v dožádaném státě, by bylo trestným činem podle jeho práva.

4. Tato Smlouva je určena výlučně pro vzájemnou právní pomoc mezi smluvními stranami. Ustanovení této Smlouvy nezakládají právo na straně jakékoli soukromé osoby získat, potlačit nebo vyloučit důkazy nebo bránit vyřízení žádosti.

**Článek 2**

**Ústřední orgány**

**1. Ústředním orgánem pro Spojené státy americké je ministr spravedlnosti nebo jím pověřené osoby na ministerstvu spravedlnosti. Smluvní strany žádají a získávají pomoc prostřednictvím svých ústředních orgánů. Ústředními orgány v České republice jsou Nejvyšší státní zastupitelství a Ministerstvo spravedlnosti.**

**2. Ústřední orgán Spojených států amerických bude podávat žádosti jménem veřejných žalobců, vyšetřovatelů s pravomocí trestněprávního donucení a úřadů a institucí se zvláštním oprávněním daným zákonem nebo jiným právním předpisem odevzdávat věci k trestnímu postihu. Ústřední orgány pro Českou republiku budou podávat žádosti jménem státních zástupců a soudů.**

**3. Ústřední orgán dožadujícího státu vynaloží veškeré úsilí k tomu, aby žádost nebyla podávána v těch případech, u nichž podle jeho názoru:**

**(a) trestný čin, na jehož základě je žádost podávána, neměl vážné následky, nebo**

**(b) rozsah žádané pomoci je neúměrný vzhledem k očekávanému trestu po odsouzení.**

**4. Ústřední orgány smluvních stran se vzájemně pro účely této Smlouvy stýkají přímo.**

**Článek 3**

**Odmítnutí pomoci**

**1. Ústřední orgán dožádaného státu může odmítnout pomoc, jestliže:**

**(a) žádost se týká vojenského trestného činu, který by nebyl trestným činem podle obecných norem trestního práva,**

**(b) žádost se týká politického trestného činu,**

**(c) provedení žádosti by bylo zřejmě na újmu svrchovanosti, bezpečnosti, veřejnému pořádku nebo podobným důležitým zájmům dožádaného státu, nebo**

**(d) žádost nevyhovuje požadavkům Smlouvy.**

**2. Před odmítnutím pomoci podle tohoto článku bude ústřední orgán dožádaného státu konzultovat s ústředním orgánem dožadujícího státu za účelem zvážení, zda pomoc může být poskytnuta za takových podmínek, které jsou považovány za potřebné. Pokud dožadující stát přijme pomoc za těchto podmínek, pak tyto podmínky dodrží.**

3. Pokud ústřední orgán dožádaného státu odmítne pomoc, sdělí důvody tohoto odmítnutí ústřednímu orgánu dožadujícího státu.

**Článek 4**

**Forma, obsah a jazyk žádostí**

1. Žádost o pomoc bude vypracována písemnou formou s výjimkou případů, kdy ústřední orgán dožádaného státu přijme v naléhavých situacích žádost jinou formou. Ve všech těchto situacích bude žádost potvrzena písemně do 10 dnů, ledaže by ústřední orgán dožádaného státu souhlasil jinak. Žádost včetně příloh bude v jazyce dožádaného státu, ledaže by bylo dohodnuto jinak. Dožádaný stát nebude mít povinnost překládat odpověď ani přílohy.

2. Žádost bude obsahovat následující:

(a) název orgánu, který dává podnět k žádosti,

(b) popis každého skutku, text příslušných ustanovení právního řádu obsahující znaky každého trestného činu a povahu a stádium řízení;

(c) popis důkazů, informací nebo jiné žádané pomoci a

(d) prohlášení o účelu, pro který jsou důkaz, informace nebo jiná pomoc žádány.

3. V nezbytném a možném rozsahu bude žádost rovněž obsahovat:

(a) informaci o totožnosti a pobytu osoby, od níž je požadován důkaz,

(b) informace o totožnosti a místě pobytu osoby, které má být doručeno, vztah této osoby k řízení a způsob, kterým má být doručení provedeno,

(c) informace o totožnosti a předpokládaném místě pobytu osob nebo věcí, které mají být vypátrány,

(d) přesný popis místa nebo osoby, které mají být prohledány a věcí, které mají být zabaveny,

(e) popis postupu, který má být zachován při provedení žádosti,

(f) popis způsobu, kterým má být podáno a zaznamenáno svědectví nebo prohlášení,

(g) popis žádaného svědectví nebo prohlášení, které mohou zahrnout seznam otázek, které je třeba položit osobě,

(h) informace , které se týkají cestovních a jiných náhrad výdajů, na něž má nárok osoba, jejíž přítomnost vyžaduje dožadující stát a

(i) jakékoli jiné informace, které by mohly být dány na vědomí dožádanému státu, aby žádost snadněji vyřídil.

**Článek 5**

**Vyřízení žádostí**

1. Ústřední orgán dožádaného státu neprodleně vyřídí žádost, popřípadě ji předá příslušnému orgánu k vyřízení. Příslušné orgány dožádaného státu včetně soudů budou mít pravomoc vydat takové pokyny k vyřízení žádosti podle této Smlouvy, ke kterým jsou oprávněny podle právního řádu dožádaného státu s ohledem na vnitrostátní postupy, a učiní vše potřebné v rámci své pravomoci, aby vyřídily žádost.

2. Pokud to bude nezbytné, žádost bude předána příslušnému orgánu osobami jmenovanými ústředním orgánem dožádaného státu.

3. Žádost bude vyřízena v souladu s právním řádem dožádaného státu, pokud tato Smlouva nestanoví jinak. Pokud dožadující stát žádá vyřízení v souladu s právním řádem dožadujícího státu a odkáže na něj, dožádaný stát vyhoví, pokud takové vyřízení neporušuje právní řád dožádaného státu.

4. Jestliže ústřední orgán dožádaného státu rozhodne, že vyřízení žádosti by narušilo probíhající trestní řízení v dožádaném státě, může po konzultaci s ústředním orgánem dožadujícího státu vyřízení odložit nebo jej podrobit nezbytným podmínkám, které budou upřesněny při konzultaci. Pokud dožadující stát přijme podmíněnou pomoc, těmto podmínkám vyhoví.

5. Dožádaný stát vynaloží veškeré úsilí k tomu, aby žádost i její obsah byly zachovány v důvěrnosti, pokud ji vyžaduje ústřední orgán dožadujícího státu. Pokud žádost nemůže být vyřízena bez porušení důvěrnosti, ústřední orgán dožádaného státu o tom bude informovat ústřední orgán dožadujícího státu, který potom rozhodne, zda přesto žádost bude vyřízena.

6. Ústřední orgán dožádaného státu bude reagovat na přiměřené požadavky ústředního orgánu dožadujícího státu týkající se stavu vyřizování žádosti.

7. Ústřední orgán dožádaného státu bude neprodleně informovat ústřední orgán dožadujícího státu o výsledku vyřízení žádosti. Pokud se vyřízení žádosti opozdí nebo odloží, ústřední orgán dožádaného státu bude informovat ústřední orgán dožadujícího státu o důvodech opoždění nebo odložení.

**Článek 6**

**Náklady**

**1. Dožádaný stát zaplatí všechny náklady vztahující se k vyřízení žádosti s těmito výjimkami:**

**(a) náklady znalců,**

**(b) náklady na překlady, tlumočení a přepisy a**

**(c) cestovní výdaje a náklady vztahující se k cestám osob cestujících buď do dožádaného státu ve prospěch dožadujícího státu nebo v souladu s článkem 11, 12 a 13.**

**2. Pokud během vyřizování žádosti vyjde najevo, že dokončení jejího vyřízení si vyžádá mimořádné náklady, ústřední orgány budou konzultovat za účelem určení předpokladů a podmínek, za kterých může vyřizování pokračovat.**

**Článek 7**

**Omezení při použití**

**Ústřední orgán dožádaného státu může vyžadovat, aby dožadující stát nepoužil informaci nebo důkaz získaný podle této Smlouvy jinak než v řízení popsaném v žádosti bez předchozího souhlasu ústředního orgánu dožádaného státu. V takových situacích dožadující stát vyhoví požadavku.**

**Článek 8**

**Změna podmínek**

**1. V rozsahu, v jakém ústava dožadujícího státu ukládá povinnost zveřejnit informaci poskytnutou podle této Smlouvy a takové zveřejnění by mohlo být v rozporu s podmínkou uloženou dožádaným státem, ústřední orgán dožadujícího státu bude konzultovat s ústředním orgánem dožádaného státu za účelem posouzení, zda podmínky mohou být změněny a zveřejnění povoleno. Ústřední orgán dožádaného státu vynaloží veškeré úsilí, aby mohl takovou změnu povolit; s přihlédnutím k podmínce uložené podle článku 7 takové zveřejnění povolí, pokud to není zakázáno jeho právním řádem.**

**2. Informace nebo důkazy, které byly řádně použity v řízení, pro které byly zajištěny, a v průběhu tohoto použití byly zveřejněny, mohou být použity pro jakýkoli účel.**

**Článek 9**

**Dokazování v dožádaném státě**

**1. Osoba v dožádaném státě, od níž se požaduje podání důkazu podle této Smlouvy, bude v případě nezbytnosti donucena dostavit se a buď podat svědectví, nebo učinit výpověď, nebo předložit věci včetně písemností, záznamů a důkazních prostředků. Jiná osoba než obviněný, která podá při vyřízení dožádání křivé svědectví ať ústně či písemně, se vystavuje nebezpečí stíhání v dožádaném státě v souladu s jeho trestním právem.**

**2. Na žádost bude ústřední orgán dožádaného státu v předstihu informovat o datu a místu, kde bude podáno svědectví nebo činěna výpověď nebo předloženy důkazy podle tohoto článku.**

**3. Dožádaný stát povolí přítomnost osob označených v žádosti v průběhu vyřizování žádosti a umožní těmto osobám upřesnit otázky, které mají být položeny osobě podávající svědectví, činící výpověď nebo předkládající důkazy.**

**4. Pokud se osoba, na níž odkazuje odstavec 1., dovolá svého práva imunity, nezpůsobilosti nebo výsady podle práva dožadujícího státu, budou svědectví, výpověď nebo jiné důkazy přesto provedeny a poskytnuty společně s tímto tvrzením ústřednímu orgánu dožadujícího státu za účelem vydání rozhodnutí příslušnými orgány tohoto státu.**

**5. Důkazy předložené v dožádaném státě podle tohoto článku a nebo ty, které jsou předmětem svědectví nebo výpovědi podle tohoto článku, budou na žádost ověřeny osvědčením, které bude v případě záznamů o podnikání vyhotoveno způsobem uvedeným ve formuláři A připojeným k této Smlouvě. Skutečnost, že takový záznam chybí nebo neexistuje, bude na žádost potvrzena za použití formuláře B, který je přílohou této Smlouvy. Záznamy ověřené formulářem A nebo formulářem B, který potvrzuje, že takové záznamy neexistují, budou přípustné pro účely dokazování v dožadujícím státě jako důkaz pravdivosti údajů, které jsou v nich uvedeny.**

**Článek 10**

**Úřední záznamy**

**1. Dožádaný stát zajistí pro dožadující stát kopie veřejně dostupných záznamů, které jsou v držení státního orgánu, orgánu veřejné správy či soudu dožádaného státu. Veřejně dostupnými záznamy se rozumějí listiny, záznamy či informace v jakékoli formě, které jsou všeobecně dostupné občanům dožádaného státu bez omezení nebo za splnění určité zákonné podmínky.**

2. Dožádaný stát může zajistit kopie jakýchkoli záznamů včetně listin nebo informací v jakékoli formě, které jsou v držení státního orgánu, orgánu veřejné správy či soudu v tomto státě, a které nejsou veřejně dostupné, a to ve stejném rozsahu a za stejných podmínek, jako by byly k dispozici pro účely jeho vlastních orgánů právního donucení nebo justičních orgánů. Dožádaný stát může podle vlastního uvážení buď zcela nebo zčásti odmítnout požadavek uplatněný podle tohoto odstavce.

3. Záznamy státního orgánu, orgánu veřejné správy či soudu podle tohoto článku budou na požádání ověřeny pracovníkem odpovědným za jejich úschovu za použití formuláře C, který tvoří přílohu této Smlouvy. Skutečnost, že takový záznam chybí nebo neexistuje, bude na žádost potvrzena prostřednictvím formuláře D, který tvoří přílohu této Smlouvy. Záznamy ověřené za použití formuláře C nebo formuláře D, který potvrzuje, že takové záznamy neexistují, budou přípustné pro účely dokazování v dožadujícím státě jako důkaz pravdivosti uvedených údajů.

**Článek 11**

**Dostavení se mimo dožádaný stát**

1. Dožadující stát může žádat, aby se jakákoli osoba dostavila do dožadujícího nebo třetího státu za účelem své přítomnosti v trestním nebo jiném řízení, které se vztahuje k trestným činům. Dožádaný stát vyzve osobu, aby se dostavila a bude informovat dožadující stát o její odpovědi.

2. Dožadující stát určí rozsah, ve kterém budou osobě placeny náklady. Osoba, která souhlasí s tím, aby se dostavila, může žádat dožadující stát o zálohu na úhradu těchto nákladů. Tato záloha může být poskytnuta prostřednictvím velvyslanectví nebo konzulátu dožadujícího státu.

3. Vyzvaná osoba nesmí být trestně stíhána, vzata do vazby či vystavena jinému omezení svobody z důvodu činů či odsouzení předcházejících jejímu odjezdu z dožádaného státu. Ústřední orgán dožadujícího státu bude moci podle svého uvážení rozšířit bezpečné zacházení i na účinky občanskoprávního řízení nebo toto bezpečné zacházení omezit. Případné rozšíření nebo zúžení bezpečného zacházení se sdělí vyzvané osobě před jejím odjezdem do dožadujícího státu.

4. Bezpečné zacházení tak, jak je uvedeno v předchozím odstavci, skončí 7 dní poté, kdy bylo osobě oznámeno, že její přítomnost již není vyžadována nebo když se tato osoba poté, kdy dožadující stát opustila, do něho dobrovolně vrátí.

**Článek 12**

**Dočasné předání osob nacházejících se ve vazbě a ve výkonu trestu odnětí svobody**

**1. Osoba nacházející se ve vazbě nebo výkonu trestu v dožádaném státě, jejíž přítomnost v dožadujícím státě nebo ve třetím státě je požadována dožadujícím státem v rámci využití pomoci podle této Smlouvy, může být dočasně předána z dožádaného státu do dožadujícího státu nebo do třetího státu k tomuto účelu, pokud tato osoba souhlasí a ústřední orgány dožádaného a dožadujícího státu se dohodnou.**

**2. Osoba nacházející se ve vazbě nebo výkonu trestu v dožadujícím státě, jejíž přítomnost je vyžadována v dožádaném státě v rámci využití pomoci podle této Smlouvy, může být předána z dožadujícího státu do dožádaného státu za předpokladu, že tato osoba s tím souhlasí a ústřední orgány obou států se dohodnou.**

**3. Pro účely tohoto článku:**

**(a) stát přijímající osobu bude oprávněn a zavázán držet předávanou osobu ve vazbě či výkonu trestu, ledaže by se ústřední orgány obou států dohodly jinak,**

**(b) přijímající stát vrátí předanou osobu do vazby nebo výkonu trestu odesílajícího státu, jakmile to okolnosti umožní anebo podle toho, jak se dohodnou ústřední orgány obou států,**

**(c) přijímající stát nebude vyžadovat, aby odesílající stát za hájil vydávací řízení nebo jakékoli jiné řízení pro návrat předané osoby, a**

**(d) doba strávená předanou osobou ve vazbě nebo výkonu trestu v dožadujícím státě bude započtena do výkonu trestu uloženého v odesílajícím státě.**

**(e) pokud je přijímajícím státem třetí stát, dožadující stát zprostředkuje veškerá ujednání nezbytná ke splnění požadavků podle tohoto odstavce.**

**4. Bezpečné zacházení bude zajištěno v souladu s článkem 11. odst. 3 a 4 s tou výjimkou, že osoba bude držena ve vazbě nebo výkonu trestu odnětí svobody pro trestný čin, pro nějž je uvězněna v odesílajícím státě.**

**Článek 13**

**Průvoz osob nacházejících se ve vazbě a výkonu trestu odnětí svobody**

**1. Dožádaný stát může přes své území povolit průvoz osoby, která je ve vazbě nebo výkonu trestu ve třetím státě a jejíž osobní přítomnost byla vyžádána**

**dožadujícím státem pro účely svědectví, dokazování či jiné pomoci při trestním řízení nebo jiném řízení spojeném s trestnou činností.**

**2. Dožádaný stát má právo a povinnost během průvozu držet osobu ve vazbě nebo výkonu trestu odnětí svobody.**

**3. Kterákoli ze stran může odmítnout udělit právo průvozu svých státních příslušníků.**

**Článek 14**
**Vypátrání nebo totožnost osob nebo věcí**

**Pátrá–li dožadující stát po místě pobytu nebo totožnosti osob nebo věcí v dožádaném státě, dožádaný stát vynaloží veškeré úsilí, aby místo pobytu nebo totožnost zjistil.**

**Článek 15**
**Doručování písemností**

**1. Dožádaný stát vynaloží veškeré úsilí k tomu, aby se uskutečnilo doručení písemnosti, která se vztahuje zcela či zčásti k jakékoliv žádosti o právní pomoc podané dožadujícím státem podle ustanovení této Smlouvy.**

**2. Ústřední orgán dožadujícího státu zašle v dostatečném časovém předstihu žádost o doručení písemnosti, na základě níž se osoba žádá, aby se dostavila před orgán v dožadujícím státě.**

**3. Ústřední orgán dožádaného státu předá doklad o doručení způsobem upřesněným v žádosti. Přijatelné způsoby, kterými se prokazuje doručení, jsou například:**

**(a) podpis osoby, které mělo být doručení podle žádosti provedeno a jímž se zároveň potvrzuje převzetí,**

**(b) protokol vyhotovený příslušným pracovníkem dožádaného státu , v němž budou popsány úkony provedené za účelem získání podpisu osoby, které mělo být doručení provedeno, ale jež buď odmítla převzít listinu nebo potvrdit její převzetí, a uvedení důvodu odmítnutí.**

**Článek 16**

**Prohlídka a zajištění**

**1. Dožádaný stát provede prohlídku, zajištění věci a její předání dožadujícímu státu, pokud tato žádost obsahuje informace zdůvodňující takový zásah podle zákonů dožádaného státu.**

**2. Na základě žádosti ústředního orgánu dožadujícího státu každá úřední osoba, která má v úschově zajištěnou věc, potvrdí za použití formuláře E připojeného k této Smlouvě totožnost věci, nepřetržitost úschovy a neporušenost jejího stavu. Potvrzení budou přípustná k účelům dokazování v dožadujícím státě jako důkaz pravdivosti údajů, které jsou v nich uvedeny.**

**3. Ústřední orgán dožádaného státu může žádat, aby dožadující stát souhlasil s podmínkami, kterých je třeba k ochraně zájmů třetích osob při předávání věcí.**

**Článek 17**

**Vrácení věcí**

**Při předání věci nebo před ním včetně předání písemnosti, záznamu nebo důkazního prostředku opatřeného pro dožadující stát při vyřizování žádosti podle této Smlouvy ústřední orgán dožádaného státu může žádat, aby dožadující stát vrátil takovou věc co nejdříve. Žádosti o vrácení věci, která nebyla podána před předáním věci, bude dožadujícím státem vyhověno pouze tehdy, bude–li to proveditelné.**

**Článek 18**

**Propadnutí**

**1.Dožádaný stát vynaloží na žádost veškeré úsilí ke zjištění, zdali se výnosy či prostředky použité ke spáchání trestné činnosti, které by případně mohly být předmětem propadnutí nebo jiného zajištění podle předpisů jednoho ze smluvních států, nacházejí na území dožádaného státu. V žádosti budou uvedeny důvody, na jejichž základě se lze domnívat, že tyto výnosy či prostředky se nacházejí na území dožádaného státu. Dožádaný stát bude informovat dožadující stát o výsledku šetření.**

**2. Pokud podle provedeného šetření dožádaný stát zjistí výnosy či prostředky použité ke spáchání trestné činnosti, může v rozsahu povoleném svými předpisy přijmout ochranná opatření včetně zabrání nebo dočasného zajištění s cílem zajistit, aby tyto výnosy či prostředky byly k dispozici pro účely propadnutí.**

3. V rozsahu povoleném svými vnitrostátními předpisy dožádaný stát může plně uznat konečné rozhodnutí vynesené v dožadujícím státě o propadnutí takových výnosů či prostředků nebo zahájit své vlastní řízení ve věci propadnutí těchto věcí.

4. Smluvní strana, která vykoná konečné rozhodnutí o výnosech nebo prostředcích použitých ke spáchání trestné činnosti, s nimi naloží v souladu se svým právním řádem. Každá ze stran může v rozsahu povoleném vnitrostátními předpisy a podle podmínek, které bude považovat za vhodné při posouzení významných okolností včetně rozsahu spolupráce poskytnuté druhou stranou, převést veškerý majetek nebo jeho část či výnosy z jeho prodeje druhé straně.

**Článek 19**
**Odškodnění**

Smluvní strany si budou pomáhat v rozsahu, který umožňují jejich příslušné předpisy, za účelem usnadnění náhrady škody. Pomoc bude zahrnovat předání věcí získaných trestnou činností.

**Článek 20**
**Peněžité tresty**

Smluvní strany si budou pomáhat v rozsahu, který umožňují jejich příslušné předpisy, v řízeních týkajících se peněžitých trestů. Pomoc se nevztahuje na samotné vybírání peněžitých trestů.

**Článek 21**
**Slučitelnost s jinými smlouvami**

Tato Smlouva se nedotýká práv a povinností smluvních stran vyžadovat a poskytovat vzájemnou pomoc na základě ustanovení jiných mezinárodních dohod nebo vnitrostátních právních předpisů.

**Článek 22**
**Konzultace**

Ústřední orgány budou ve vzájemně dohodnutých termínech konzultovat možnosti co nejúčinnějšího provádění této Smlouvy. Ústřední orgány se mohou též

**dohodnout na případných praktických opatřeních, která budou nezbytná pro snadnější plnění podmínek této Smlouvy.**

**Článek 23**

**Ratifikace, vstup v platnost a ukončení platnosti**

**1. Tato Smlouva podléhá ratifikaci a ratifikační listiny budou vzájemně předány v Praze co možná nejdříve.**

**2. Tato Smlouva vstoupí v platnost dva měsíce poté, co dojde k výměně ratifikačních listin.**

**3. Tato Smlouva se použije na jakékoliv dožádání, předložené poté, co vstoupila v platnost, i když odpovídající úkony nebo opomenutí nastaly před tímto datem.**

**4. Tato Smlouva zůstane v platnosti, pokud nebude vypovězena některou ze smluvních stran písemným oznámením druhé smluvní straně. Výpověď nabyde účinnosti šest měsíců ode dne doručení oznámení.**

**NA DŮKAZ UVEDENÉHO níže podepsaní, k tomu náležitě zmocnění, podepsali tuto Smlouvu.**

**DÁNO ve Washingtonu dne 4. února 1998 ve dvou původních vyhotoveních, každé v jazyce anglickém a českém, přičemž obě znění mají stejnou platnost.**

| ZA SPOJENÉ STÁTY AMERICKÉ: | ZA ČESKOU REPUBLIKU: |
|---|---|
| [signature] | [signature] |

**Formulář A**

**POTVRZENÍ O ZÁZNAMECH TÝKAJÍCÍCH SE PODNIKÁNÍ**

**Já, ____________(jméno)____________ po poučení, že nepravdivá výpověď mě vystavuje nebezpečí trestního stíhání, jako svědek dosvědčuji takto:**

**Jsem zaměstnán u/pracuji pro ____________(název podniku, od kterého se písemnosti požadují)____________ ve funkci ____________ (úřední titul) ____________ a z titulu této své funkce jsem oprávněn a kvalifikován k potvrzení tohoto osvědčení:**

**Každý zde přiložený záznam je záznamem ve správě výše jmenovaného podniku a**

**(A) byl pořízen v době nebo přibližně v době, kdy došlo k dále popsaným skutečnostem (hodící se zakroužkujte)**

**(1) osobou, která o těchto skutečnostech věděla;**

**(2) nebo na základě informací takovou osobou předaných;**

**(3) které byly pořízeny osobou, k jejímž povinnostem jinak patří zaznamenávat informace o takových skutečnostech za výše uvedený podnik (firmu);**

**(B) byly vedeny v průběhu řádně prováděné podnikatelské činnosti,**

**(C) z titulu podnikatelské činnosti byly tyto záznamy pořízeny jako běžná rutinní praxe a**

**(D) pokud takový záznam není originálem, je duplikátem takového originálu.**

____________(Datum vydání)____________

____________(Země, v níž bylo potvrzení vydáno)____________

____________(Podpis)____________

**Formulář B**

**POTVRZENÍ O NEEXISTENCI ZÁZNAMŮ O PODNIKÁNÍ**

**Já, ____________(jméno)____________ po poučení, že nepravdivá výpověď mě vystavuje nebezpečí trestního stíhání, jako svědek dosvědčuji takto:**

**Jsem zaměstnán u/pracuji pro ____________(název podniku, od kterého se písemnosti požadují)____________ ve funkci ____________ (úřední titul) ____________ a z titulu této své funkce jsem oprávněn a kvalifikován k potvrzení tohoto osvědčení:**

**V mém zaměstnání/při mé práci u výše uvedeného podniku jsem obeznámen se záznamy o podnikání vedenými tímto podnikem. Shora uvedený podnik uchovává záznamy o svých podnikatelských operacích, které**

**(A) byly pořízeny v době nebo přibližně v době, kdy došlo k dále popsaným skutečnostem (hodící se zakroužkujte)**
- **(1) osobou, která o těchto skutečnostech věděla;**
- **(2) nebo na základě informací takovou osobou předaných;**
- **(3) které byly pořízeny osobou, k jejímž povinnostem jinak patří zaznamenávat informace o takových skutečnostech za výše uvedený podnik (firmu);**

**(B) byly vedeny v průběhu řádně prováděné podnikatelské činnosti a**

**(C) z titulu podnikatelské činnosti byly tyto záznamy pořízeny jako běžná rutinní praxe.**

**Mezi takto evidovanými záznamy jsou záznamy o jednotlivcích a právnických osobách, kteří prováděli obchod se shora uvedeným podnikem a účtovali s ním. S vynaložením veškerého úsilí jsem pátral nebo nechal pátrat po takových záznamech. Nebyly nalezeny žádné záznamy, z nichž by vyplývalo, že mezi výše zmíněným podnikem a následujícími jednotlivci docházelo k obchodní činnosti.**

**Pokud by shora uvedený podnik vedl účet ve prospěch těchto jednotlivců nebo právnických osob nebo pokud by se s nimi podílel na nějakém obchodu, musely by záznamy tohoto podniku takové skutečnosti odrážet.**

____________(Datum vydání)____________

____________(Země, v níž bylo potvrzení vydáno)____________

____________(Podpis)____________

**Formulář C**

**POTVRZENÍ O ÚŘEDNÍCH ZÁZNAMECH**

**Já, ____________(jméno)____________ po poučení, že nepravdivá výpověď mě vystavuje nebezpečí trestního stíhání, jako svědek dosvědčuji takto:**

1. **____________(název státního orgánu či úřadu)____________ je státním orgánem nebo úřadem ____________(země)____________ a je ze zákona oprávněn uchovávat úřední záznamy obsahující skutečnosti, které nutno ze zákona hlásit, zaznamenávat nebo archivovat;**
2. **moje postavení u zmíněného státního orgánu je ____________(funkce) ____________;**
3. **z titulu mé funkce jsem vyhotovil pravdivé a přesné kopie záznamů, jež jsou ve správě tohoto státního orgánu a**
4. **tyto níže popsané kopie jsou připojeny.**

**Popis záznamů:**

____________(Podpis)____________

***(Úřední pečeť nebo razítko)***

____________(Datum)____________

**Formulář D**

**POTVRZENÍ O NEEXISTENCI ÚŘEDNÍCH ZÁZNAMŮ**

**Já, __________(jméno)__________ po poučení, že nepravdivá výpověď mě vystavuje nebezpečí trestního stíhání, jako svědek dosvědčuji takto:**

1. **__________(název státního orgánu či úřadu)__________ je státním orgánem nebo úřadem __________(země)__________ a je ze zákona oprávněn uchovávat úřední záznamy obsahující skutečnosti, které nutno ze zákona hlásit, zaznamenávat nebo archivovat;**
2. **níže popsané záznamy obsahují skutečnosti, které je ze zákona nutno ohlašovat, zaznamenávat nebo archivovat, a takové skutečnosti se zpravidla ohlašují, zaznamenávají nebo archivují u výše uvedeného státního orgánu nebo úřadu;**
3. **moje postavení u zmíněného státního orgánu je __________(funkce) __________;**
4. **z titulu své úřední funkce jsem s vynaložením veškerého úsilí pátral nebo nechal pátrat po níže uvedených záznamech výše uvedeného úřadu a**
5. **nebylo zjištěno, že by se zde podobné záznamy vyskytovaly.**

**Popis záznamů:**

__________(Podpis)__________

***(Úřední pečeť nebo razítko)***

__________(Datum)__________

**Formulář E**

**POTVRZENÍ TÝKAJÍCÍ SE ZAJIŠTĚNÝCH VĚCÍ**

**Já, ____________(jméno)____________ po poučení, že nepravdivá výpověď mě vystavuje nebezpečí trestního stíhání, jako svědek dosvědčuji takto:**

1. **Moje postavení ve státním orgánu ____________(země)____________ je ____________(funkce)____________;**
2. **byl jsem pověřen správou níže uvedených věcí ____________(kým) ____________ ____________(jméno osoby)____________ dne ____________(datum)____________ v ____________(místo)____________ a**
3. **předal jsem správu níže uvedených věcí ____________(komu)____________ ____________(jméno osoby)____________ dne ____________(datum)____________ v ____________(místo)____________ ve stejném stavu, v jakém jsem je převzal (nebo v odlišném stavu, jak je uvedeno níže)**

**Popis věcí:**

**Změny stavu věcí po dobu mé správy:**

____________(Datum vydání)____________

____________(Země, v níž bylo potvrzení vydáno)____________ ***(Úřední pečeť nebo razítko)***

____________(Podpis)____________